# Rottenberry v. Pipes.

*Petition for Allotment of Homestead.*

53    447
112   164

1. *Exemption; what law governs.*—The laws in force at the husband's death govern as to the exemption of property from sale for payment of debts in favor of the widow and minor children.

2. *Exemptions prior to Revised Code.*—Under the law in force in the year 1866, prior to the time when the Revised Code went into operation, the widow, or if no widow, the minor child or children of a decedent, were not entitled to have set apart and exempted $500 worth of real estate, including the homestead, &c., unless there was a necessity for a sale of all of decedent's lands to pay debts.

3. *Same.*—The statutes then in force pointed out the contingency upon which the exemption arose, and the manner and time in which it should be claimed; they conferred no rights, but gave a mere privilege which might ripen into a right, if exercised and asserted in the mode and upon the event prescribed by the statute. If the exemption was not claimed before sale, it was lost.

APPEAL from Probate Court of Limestone.

The appellee, Angelina Pipes, formerly McGuire, filed her petition in the probate court on the 6th day of October, 1873, praying that she and two minor children be allowed a homestead, to the value of $500, in certain lands which belonged to her deceased husband.

The petition states that McGuire, the husband of petitioner, died intestate in the county "some time in the year 1866," seized and possessed of certain lands, leaving petitioner, his widow, and two minor children; that his administrator sold all his lands for the payment of debts, "without setting

[Rottenberry v. Pipes.]

apart a homestead in said lands for petitioner and her children," and without her consent; and that she and her children are entitled to a homestead in said lands exempt from administration and the payment of debts. No one was made defendant in the petition, but Rottenberry, the appellant, who purchased McGuire's land at the administrator's sale, was permitted to make himself a party defendant on his own motion. He demurred to the petition, on the ground that there was no allegation that the estate was insolvent, and that the facts stated showed no right to relief. The demurrer having been overruled, appellant put in an answer.

It appeared on the hearing that Rottenberry purchased the lands in 1867, under an order of sale for payment of debts made in August, 1867; had paid all the purchase money and received a conveyance under an order of the court; that before the sale dower had been assigned the petitioner in the lands, including the homestead occupied by her husband; that she thereupon surrendered possession to appellee and moved away; that McGuire's estate was solvent, and there had been a partial distribution among the heirs ; that petitioner knew of the sale of the lands, and had never made any objection thereto, or claimed any homestead therein until the filing of the petition.

The court decreed that petitioner was entitled to a homestead in the lands, and this decree is now assigned as error.

R. A. McCLELLAN, for appellant.—The estate was not insolvent, hence petitioner was not entitled to relief. R. C. §§ 2061, 3539; 45 Ala. 274; 42 Ala. 315; 41 Ala. 327. This proceeding cannot be maintained against the purchaser—the land was necessarily sold to pay debts ; and after this was done, a surplus remained. An exemption must be claimed before the proceeds are disposed of. 42 Ala. 460; 10 Ala. 270; 5 Ala. 233 ; 27 Texas, 688; 46 Ala. 17 ; 34 Penn. 256; 97 Mass. 392. Appellee in fact abandoned her home with no intention of returning, which extinguishes her right. 27 Texas, 450; 43 Illinois, 169.

JONES & TURRENTINE, contra.

BRICKELL, C. J.—The husband of the appellee died in 1866, and his real estate was sold by his administrator on the 28th October, 1867, under an order of the court of probate, for the payment of his debts, granted on the 12th of August, 1867. The right of the appellee to an exemption of property, real or personal, from liability for debts of the

[Rottenberry v. Pipes.]

husband, depends on the law of force at the time of the death of the husband. *Taylor* v. *Pettus*, 52 Ala. 287. The Revised Code did not become operative as the law of the State until December 1st, 1867. R. C. p. iv, sections 6, 7, 8, 9, p. 960.

The Code of 1853, § 1738, exempted particular property, real and personal, from sale for the payment of the debts of a decedent, when he left a widow, or a child or children, under twenty-one years of age, members of his family. Subdivision 6 of the section, which alone bears upon this case, was in these words : "If it is found necessary to sell all the real property for the payment of debts, the widow, or if there is no widow, the executor or administrator, must select real estate to the value of five hundred dollars, to include the homestead, or such portion of the same as can be selected without injury to the remaining portion of the estate, and if this cannot be done other lands in the place thereof, to be estimated by the appraisers, and set off by metes and bounds, which is exempt from sale, and the title to which vests in such widow and child or children ; or in such children, if no widow." On the 30th of January, 1860, an act was passed construing this section of the Code of 1852, simply declaring the property exempt from the claims of creditors should be exempt also from the claim of heirs, distributees or legatees. Pamph. Acts, 1859–60, p. 18.

There is some difficulty in determining the precise effect of this statute. The Code exempted the real estate from sale for the payment of debts, when a sale became necessary, as it did in the personal property enumerated in it. The exemption was in favor of the widow, and the infant children of the decedent, not in favor of all the heirs or distributees. This amendatory act exempts the real estate not only from the claims of creditors, but also from the claims of heirs, distributees or legatees. Under the Code the title to the real estate vested in the widow and infant children, thus expressly relieving it from all claim by heirs or distributees or legatees, or any one else, when a sale was necessary for the payment of debts, the event on which the right to an exemption accrued. It is not easy to assign to this amendatory statute any other operation than as creating a right in the widow and infant children to the exemption, absolutely, without regard to whether a sale of the real estate was or not necessary for the payment of debts; a right which would accrue on the death of the husband or father, and could then be asserted. If this is not the purpose of the statute, it has no other office than

[Rottenberry v. Pipes.]

merely to declare the existing law, from an abundance of caution, to avoid the possibility of a construction which would subject the right of the widow and minor children, members of the family of the decedent, to infringement or impairment by the interposition of claim by adult heirs who were not in a relation of legal dependence on the decedent. The General Assembly seem to have acted on the construction of the act of 1860 we have indicated.

On the 9th of December, 1864 (Pamph. Acts, 1864, page 93), an act was passed declaring the act of January 30, 1860, should apply only when the estate was insolvent, and a sale of the real estate for the payment of debts became necessary. It was further provided that when the widow or minor children became entitled to claim real estate under section 1738 of the Code of 1852, the judge of the court of probate must appoint three appraisers to lay it off by metes and bounds, and make report thereof to the court. If the appraisers reported the allotment could not be made without injury to the estate, the court was required to order the payment to the widow or minor children of five hundred dollars of the proceeds of the sale of the lands. This statute restored the Code of 1852, so that the right to the exemption became again dependent on a sale of all the lands for the payment of debts. Then, a necessity existed to provide a home for the family of the decedent, to whose maintenance he was compellable; and in that event, if living he could have claimed as exempt from sale, under legal process, lands of the same value as, now that he is dead, his widow or infant children can claim. This act goes further than the Code of 1852, in providing for the payment of money, from the proceeds of sale, if the assignment of land could not be made without injury to the estate. Such were the statutes of force when the husband of appellee died, and when the lands were sold. On these her right to the exemption claimed depends, whatever may be the changes by subsequent legislation or constitutional provisions.

The right to the exemption is purely statutory, and must be asserted in the mode and on the events and at the time prescribed by the statute. It was not asserted by the appellee until after the lands had been sold, and a confirmation of the sale by the court of probate. It is then asserted, not against the personal representative, and the heirs, and creditors of the decedent, but really against the purchaser, whose rights only are to be disturbed and affected. The statutes to which we have referred do not authorize any such claim. They contemplate the exemption should be claimed before

[Rottenberry v. Pipes.]

a sale of the lands, and that the lands should be sold freed from such claim. Prior to these statutes, it had long been the policy of the State to exempt from liability to sale for debts, property of the kind necessary for the support of families. The exemption was a privilege which must have been asserted before the sale of such property, or it would not ripen into a perfect right.

Such real property as the head of the family should select, to include the homestead, not to exceed forty acres, and in value not to exceed five hundred dollars, was, by the Code of 1852, exempt from sale by any legal process. Code of 1852, section 2462, subdivision 4. The purpose of this statute and that under consideration was the same—to prevent the families of insolvent debtors from being rendered homeless. They were expressed in the same language. When the husband and father was living, and a sale under legal process of his lands was about being made, he could select such of his real estate as exempt as was not of greater value than five hundred dollars, or more in quantity than forty acres. If he died, and a sale of all his lands was necessary for the payment of debts, his widow, or if he left no widow, his personal representative, could select real estate, to the value of five hundred dollars, as exempt from sale for the payment of debts. In *Bell* v. *Davis*, 42 Ala. 460, it was decided, if the exemption was not claimed by a defendant in execution before a sale of his lands, it was lost. The principle of the decision is, that a claim before sale was the condition precedent on which the exemption depended. The right is to an exemption of the land from sale for the payment of debts. It is, in its very nature, a right which must be asserted before sale. If the sale is made, the very disposition from which the party was entitled to an exemption occurs. It is immunity, freedom from sale, the statute secured, and the immunity could not be extended when the sale was accomplished. The sale may or not be an invasion of the right or privilege the statute declares, for which redress could be had in an appropriate action. But the exemption from sale, after the sale was made, would be an impossibility. The sale, it may be, if made in defiance of the claim of exemption, would not impair the right to it. But when made without claim of the exemption, it passes the title freed from it.

The words of the statute import, that the exemption must have been claimed and allowed before a sale of the lands. The right only arose *when it was necessary to sell all the real estate for the payment of debts.* Then only were the widow

[Rottenberry v. Pipes.]

and infant children to be stripped of all means of support, and then the necessity for the exemption arose. The widow, usually an adult, most often the mother of the infant children who were to be provided with a home, had then the right of selecting the land to be exempt. If there was no widow, the children being minors, incapable of asserting their rights, it became the duty of the executor or administrator to make the selection. The selection, the choice, the preference, the taking, was of land which was not to be sold for the payment of debts. That not selected, or chosen, was the subject of sale. The statute would scarcely have more clearly expressed the intention of the lawmaker that the exemption must have been claimed before the sale, and not afterwards, if it had so declared *in totidem verbis*, than as it was expressed. It was never intended the lands should be sold incumbered by the claim of exemption. No more successful contrivance for their sacrifice, and the destruction of the rights of creditors, could be devised than such a sale. The embarrassments of judicial sales for the payment of debts, often ruinous to debtor and creditor, now existing, are sufficiently numerous, without increasing them by giving a construction to the statute which would authorize a sale of the lands of a decedent incumbered by the claim of a homestead exemption. But few purchasers, not venturing on a mere speculation, in which they supposed they had much to gain and little to lose, would buy property subject to such an incumbrance. The selection of the land by the widow, if there was one, and if no widow, by the executor or administrator, was, under the law existing at the death of the appellee's husband, a condition precedent, essential to its exemption from sale. No such selection having been made, the appellee could not subsequently claim the exemption. Her right, if right she had, has been lost by her own want of diligence.

It may be said the infant children were entitled to share with the appellee in the exemption, and *laches* not being imputable to them, they should not suffer from appellee's want of diligence. It would be enough to say they are not parties to this proceeding, and we are not required now to adjudicate their rights. If we were, the right being dependent, as it is by the terms of the statute, on the selection before sale by the widow, or by the personal representative, if no widow, of the land claimed as exempt, a performance of the condition is as essential to the right of an infant, as an adult. The statute made no exception in favor of infants, and courts have no authority to engraft one. They could as

[McNair v. The State.]

well make it in favor of persons laboring under any other disability, as under that of infancy. It was for the legislalature, in creating the right, to prescribe the conditions on which it could be perfected, and a waiver of compliance with the conditions when prescribed is not within the reach of judicial dispensation.

We confine our decision exclusively to the statutes existing at the death of the husband of the appellee. These are the measure of her rights. Subsequent statutes differ from them materially, and what may be the rights of a widow, or infant children, under them, in a case like this, we have not considered, and must not be understood as determining, either the one way or the other.

Without discussing any other point involved in the cause, the view we have taken is fatal to the appellee's right of recovery. The decree of the court of probate must be reversed, and the cause remanded.