OF THE

## STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1900.

*(Continued from Volume 159.)*

KEENE et al., Appellants, v. WYATT et al.

In Banc, May 21, 1901.

Homestead: SUBJECT TO SALE. Under section 2693, Revised Statutes 1879, the homestead of a deceased homesteader may be sold to pay his debts subject to the homestead rights of the widow and his minor children. The sale, under the statute, need not be postponed until the death of the widow or the majority of the children, but, subject to their homestead rights, the fee to the premises may be sold after the death of the head of the family for the payment of his debts. (In part overruling Boyles v. Cox, 153 Mo. 242, and In re Powell's Estate, 157 Mo 151. All concur except MARSHALL, J., who dissents in a separate opinion.)

Appeal from Mississippi Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*W. C. Russell* and *H. C. O'Bryan* for appellants.

Vol 160 mo—1                                      (1)

(1) The homestead is not subject to sale in any event during its continuance; neither the particular or general estate during the life of the particular estate. R. S. 1879, sec. 2693; Broyles v. Cox, 54 S. W. 488; In re Powell's Estate, 57 S. W. 717; Bank v. Guthrey, 127 Mo. 196. (2) Under section 2693, Revised Statutes 1879 (in force when Barker died), the homestead passed to the widow and minor children and the general estate after its expiration to the heirs. R. S. 1879, sec. 2693. (3) It was therefore beyond the jurisdiction of the probate court, and the order of sale made in this case, though seemingly regular in form and substance, is void, because the court had no jurisdiction of the subject-matter. Taylor v. Todd, 48 Mo. App. 550; Abernathy v. Moore, 83 Mo. 65.

*Russell & Deal* for respondents.

(1) Under the law of 1875, the homestead of decedent was liable to be sold for payment of debts, subject to the homestead rights of widow and children. It has been repeatedly so held. Poland v. Vesper, 67 Mo. 727; Hannah v. Hannah, 109 Mo. 241; Anthony v. Rice, 110 Mo. 223; Huffschmidt v. Gross, 112 Mo. 660. The statute then in force expressly so provides. R. S. 1879, sec. 2693. This has become an established rule of property, and should not now be changed upon the rule of *stare decisis.* (2) The homestead exemption right is of recent statutory origin, and while the court looks favorably upon it, should not be extended beyond the plain letter of the law. Casebolt v. Donaldson, 67 Mo. 308. Under the laws that existed prior to 1875, on death of the head of the family, the wife took a fee simple estate. Grogg v. Grogg, 65 Mo. 243; Skouten v. Wood, 57 Mo. 380. And after death of the widow the property did not become liable for the debts of the husband. French v. Stratton, 79 Mo. 560. As soon as

this became known the Legislature limited the exemption to the minority of the children and life of widow, and expressly made property subject to payment of debts of estate; said law to take effect at once after its passage.   Laws 1875, p. 60.

## In Division Two.

BURGESS, J.—In 1887 Josiah Barker died seized of one hundred acres of land in Mississippi county, of the value of one thousand dollars, upon which he lived, as his homestead, with his wife, Elizabeth Wyatt (who afterwards intermarried with her co-defendant Asa Wyatt), and her minor children, to-wit, Ida, who afterwards intermarried with her co-plaintiff Charles Keene, Mary, who afterwards intermarried with her co-plaintiff Lee Bartouch, and the defendants Eddie Barker, Norah Barker and Sallie Barker.

In February, 1888, Robert Vowels was appointed administrator of Josiah Barker's estate by the probate court of said county, and duly qualified as such, and took charge of the estate, which consisted of this land and a small amount of personal property.   Demands aggregating $892.69 were allowed against the estate, but none of them were liens upon the land.

At the March term, 1891, of the probate court, an order was made as follows:   "In the matter of the estate of Josiah Barker, deceased.   Now comes Robert Vowels, administrator of the said estate, and states to the court that he has nothing to report and asks the court to continue said cause to the June term for final settlement, and the court being satisfied, orders that the same be and is hereby continued to the June term for final settlement."

At the June term, 1891, instead of making final settlement, the administrator made his third annual settlement, upon which the court made the following order:   ". . . . . And the court being sufficiently advised, and from records in

this office is satisfied, that the administrator has not sufficient means in his hands to satisfy the claims against said estate, orders that the real estate belonging to said deceased be sold according to law to satisfy said indebtedness." This order was not renewed at the September term, 1891, of the probate court.

The land was appraised at one thousand dollars before it was sold. Notice was published according to law, describing the land and stating the time, terms and place of sale, and that it would be sold subject to the homestead of the widow and minor children. In pursuance of the order and notice of sale the administrator sold the land to the defendants Asa and Elizabeth Wyatt, for the sum of one hundred dollars, and made report of the sale to the probate court, which said sale was at the June term, 1891, approved. The administrator thereafter made a deed to the purchasers, Asa and Elizabeth Wyatt, for the land, and they on the first day of April, 1895, sold and conveyed the same to their son, Charles Wyatt, for the consideration, as recited in the deed, of $1,000, and he on the same day borrowed $1,000 from the defendant Sonora Lindsay and gave a deed of trust on the land to secure its payment.

This suit is prosecuted for the purpose of having the sale of the land by the administrator set aside and declared void upon the ground that it was the homestead of the widow, and minor children at the time of the sale, and to have removed the cloud on the title to the land caused by said deeds. The plaintiffs were not in possession of the land at the time of the institution of this suit.

The defendants, Elizabeth J. Wyatt and Asa Wyatt, Charles Wyatt and Sonora Lindsay, answered jointly and admitted that Josiah Barker died about 1887, the owner of the land in question, and left as his widow, Elizabeth J. Barker, now the wife of Asa Wyatt, and his children as set forth in the

petition, and that said widow was entitled to a homestead in said land during her natural life.

The court below found for defendants and rendered judgment accordingly.    Plaintiffs appeal.

The facts as stated being admitted, it is asserted by plaintiffs that the probate court had no power to make an order for the sale of the land for the payment of debts during the lifetime of the widow and the minority of the children.    Upon the other hand it is contended by defendants that under the homestead law then in force (Laws 1875, p. 60; Revised Statutes 1879, p. 450), the homestead of decedent was liable to be sold for the payment of debts, subject to the right of dower in the widow, and the homestead right of the widow and children.

The act of March 18, 1875, section 2693, Revised Statutes 1879, provides that:  "If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its legal majority, and until the death of such widow, and such homestead shall, upon the death of such housekeeper or head of a family, be limited to that period. But all the right, title and interest of the deceased housekeeper or head of a family in the premises, except the estate of the homestead thus continued, shall be subject to the laws relating to devise, descent, dower, partition and sale for the payment of debts against the estate of the deceased, and the probate court having jurisdiction of the estate of the deceased housekeeper or head of a family shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto."

It is perfectly clear from this section of the statute that it is only the homestead right that is exempt from the payment of the debts of the deceased, and that after the expiration of this right by the express provisions of the statute, it is subject to "the laws relating to partition and sale for the payment of debts against the estate of the deceased."

Under the statute, when Josiah Barker died the fee of the land in controversy was an asset for the payment of the demands against his estate, and the sale being necessary for their payment, and the probate court having jurisdiction to make the order, the homestead was properly sold for that purpose, subject to occupancy by the widow and children, as their homestead. But it could not have been sold under attachment or execution against him during his lifetime for the obvious reason that it was within the statutory size and value allowed by statute to the head of a family for a homestead, and under such circumstances absolutely exempt from such processes. [Sec. 2689, R. S. 1879; Bank v. Guthrey, 127 Mo. 189; Macke v. Byrd, 131 Mo. 682.] But there was no such exemption from sale of the homestead after the death of Josiah Barker, subject to the widow's right of dower in the homestead, and the homestead right of herself and the minor children. When section 2689, *supra,* which exempts from attachment and execution the homestead of every housekeeper or head of a family is considered in connection with section 2693, which provides that "all the right, title and interest of the deceased housekeeper . . . . . . . in the premises, except the estate of the homestead thus continued, shall be subject to the laws relating to . . . . . . . . partition and sale for the payment of debts," there can be no question we think, but that the homestead being within the statutory size and value, was subject to sale by an order of the probate court for the payment of demands against the estate, subject, however, to the conditions and limitations heretofore stated.

In Poland v. Vesper, 67 Mo. 727, the plaintiff sued in

ejectment for the possession of a tract of land, under a title acquired under the following circumstances: William Vesper died intestate on the twenty-fifth day of March, 1875, seized of the land in contest, which was occupied by him and his family as a homestead. His widow and the defendant, his son, were his only heirs, the latter at his father's death being twenty years of age. Debts were allowed against the estate amounting to several hundred dollars. The land was set off to the widow as a homestead, and afterwards, on the petition of the administrator, the court ordered the sale of the land, subject to the homestead for the payment of debts against the estate, and the plaintiff became the purchaser and received the administrator's deed therefor, and the only question for decision was whether the sale by the administrator passed the title to the purchaser. The court said: "By this section (above quoted) it is the homestead right which is exempt from the payment of debts of the deceased—nothing more. After that is set out there remains an estate in the land which descends to the heirs of the deceased, and, by express provision of the statute, is subject 'to the laws relating to partition and sale for the payment of debts against the estate of the deceased.' When this suit was instituted the widow was dead, and the defendant, the sole heir of the deceased, William Vesper, had attained his legal majority. The object of the statute was to secure a home for the widow and minor heirs, and the sale of the land subject to the homestead right, could in no manner interfere with them in the enjoyment of that right. The instruction given by the court for the defendant should have been refused, and that asked by plaintiff given. It declared that the administrator's deed conveyed the title to plaintiff, subject to the homestead right of the widow and the defendant, and that, the widow having died and defendant attained his majority before the commencement of the suit, plaintiff was entitled to recover."

That case was cited with approval in Murphy v. De-France, 105 Mo. 53; Schaffer v. Beldsmeier, 107 Mo. 316; and in Tucker v. Wells, 111 Mo. 404, and has never been overruled, or even criticised. It is on all fours with the case in hand, and must be regarded as controlling authority unless overruled. That the construction placed by it upon the statute is the proper and only logical one, seems to us to be too plain for controversy.

As the right of the wife and minor children to occupy the homestead is of certain duration, that is, during the lifetime of the widow and the minority of the children, there could have been no ground for the postponement of the sale of the homestead until the death of the widow, and until the youngest child became of age, on the ground that a sale under such circumstances would be likely to be made at a sacrifice; besides, the law never contemplated that an estate should be in process of settlement for say, possibly, twenty years or more, and until the youngest child became of age, or possibly fifty years during the lifetime of the widow, nor that there should be more than one administration upon the same estate, one or the other of which would have been absolutely necessary if the homestead was not subject to sale for the payment of debts against the estate. That the law intended that the whole estate should be administered, including the homestead, subject, however, to the homestead rights of the widow and children, we think is clear.

There was no substantial evidence to sustain the charge of fraud, by Wyatt and wife, in the purchase of the land at the administrator's sale, nor was the inadequacy in the price at which the land was purchased by them sufficient to justify setting the sale aside upon that ground.

Finding no reversible error in the record the judgment is affirmed. *Sherwood, P. J.,* and *Gantt, J.,* concur.

Keene v. Wyatt.　.

## In Banc.

PER CURIAM.—This case was sent by Division Two of its own motion to Court in Banc, because of its apparent conflict with some observations in the opinions of the court in Broyles v. Cox, 153 Mo. 242, and In re Powell's Estate, 157 Mo. 151.

The facts which form the basis of this action occurred while the homestead law of 1875 was in force, and the case is of course governed by that law, while the facts which form the basis of the cases of Broyles v. Cox, and In re Powell's Estate, *supra,* bring them within the provisions of the homestead law of 1875, 1879 and 1889, as amended by the Act of 1895, and in so far as the questions really involved in those cases are concerned, they are not in conflict with the case at bar, but the rulings in those cases to the effect that the homestead of a deceased housekeeper or head of a family, within the statutory size and limits, can not be sold under the homestead law of 1875, by an order of the probate court of the proper county, for the payment of the debts allowed against the estate of the deceased, subject to the homestead rights of the widow and minor children, are disapproved. With these suggestions, the foregoing opinion of Burgess, J., in Division Two is approved, and adopted by the Court in Banc. *Burgess, C. J., Sherwood, Robinson, Brace, Valliant* and *Gantt,* JJ., concur; *Marshall,* J., dissents.

## Dissenting Opinion.

MARSHALL, J.—There is no conflict between the decision rendered in this case by Division Number Two, and the cases of Broyles v. Cox, 153 Mo. 242, and In re Powell's Estate, 157 Mo. 151. In this case the ancestor died

in 1887, while in both of said other cases the ancestor died after the passage of the Act of 1895, which struck out the amendment of 1875 from the statute, upon the faith of which (the Act of 1875) it is claimed that the proceeding in this case is right. No such statutory provision being in the law when the cases of Broyles and Powell arose, the reasoning employed would not apply.

But I am of opinion that the judgment of the circuit court in this case is wrong, as is also the case of Poland v. Vesper, 67 Mo. 727, upon which the decision of the circuit court in this case was principally bottomed.

An examination of the homestead statutes of this State will, I think, demonstrate this to be true.

Prior to 1865 there was no homestead exemption law in Missouri. Such right was first created by chapter 111, General Statutes 1865. That chapter consisted of eleven sections. Section 1 provided that: "The homestead of every housekeeper or head of a family, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the amount and value herein limited, which is or shall be used by such housekeeper or head of a family as such homestead, shall, together with the rents, issues and products thereof, be exempt from attachment and execution, except as herein provided," etc.

Section 5 provided: "If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead, to the value aforesaid, shall pass to and vest in such widow or children, or if there be both, to such widow and children, *without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime;* and such widow and children, respectively, shall take the same estate therein of which the deceased died seized; *provided,* that such children shall, by force of this chapter, only have an interest in such homestead until they shall attain their major-

ity; and the probate court having jurisdiction of the estate of such deceased housekeeper or head of a family, shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto."

Section 7 provided that: "Such homestead shall be subject to attachment and levy of execution upon all causes of action *existing at the time of the acquiring of the homestead,* except as herein otherwise provided; and, for this purpose, such time shall be the date of the filing in the proper office for the record of deeds, the deed of such homestead, and (in case of existing estates) such homestead shall not be subject to attachment or levy of execution upon any liability hereafter created."

At the August term, 1874, of this court, this act, and particularly section five thereof, came before this court for adjudication in the case of Skouten v. Wood, 57 Mo. 380. NAPTON, J., wrote the opinion of the court. He pointed out that the act was taken from the Vermont statute, and that in adopting it the Legislature must be construed to have taken it with the judicial construction placed upon it by the courts of Vermont, and that the courts of that State had construed section five to mean that the widow took the fee to the homestead, and that, after the majority of the children and the death of the widow, the fee passed to the heirs of the wife to the exclusion of the husband's heirs, and that the children of the deceased head of the family had only a right of occupancy during their minority, but had no right to the property thereafter, and "that so far as homesteads are concerned, the statute of descents and distributions is repealed." The learned judge recorded a protest against such a construction, but felt bound to adopt it because of the Vermont decisions.

This construction of the statute was not satisfactory to the people of this State, for at the next session of the General Assembly, held in 1875, the lawmakers amended section five so

as to make it read as follows:   "If any such housekeeper or head of a family shall die leaving a widow or minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its legal majority, and until the death of such widow, and such homestead shall, upon the death of such housekeeper or head of a family, be limited to that period. But all the right, title and interest of the deceased housekeeper or head of a family in the premises, except the estate of the homestead thus continued, shall be subject to the laws relating to devise, descent, dower, partition and sale for the payment of debts against the estate of the deceased, and the probate court having jurisdiction of the estate of the deceased housekeeper or head of a family shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto."

The effect of this legislation was to strike out of section 5 of the laws of 1865, the words, "and such widow and children, respectively, shall take the same estate therein of which the deceased died seized; provided, that such children shall, by force of this chapter, only have an interest in such homestead until they shall attain their majority," and to substitute in lieu thereof the words:   "Until the youngest child shall attain its legal majority, and until the death of such widow, and such homestead shall upon the death of such housekeeper or head of a family, be limited to that period.   But all the right, title and interest of the deceased housekeeper or head of a family in the premises, except the estate of the homestead thus continued, shall be subject to the laws relating to devise, descent, dower, partition and sale for the payment of debts against the estate of the deceased."

The purpose intended to be accomplished by this amendment was to correct the result declared in Skouten v. Wood, and to cause the property to pass to the heirs of the husband instead of to the heirs of his widow, after the termination of the extended homestead rights of the widow and children.

It will be observed that the first purpose and intention of the law of 1865 and also of the Act of 1875, was to pass and vest the homestead in the widow and children, *"without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime."* *

Under the law of 1865 the homestead was exempt from attachment and execution during the life of the housekeeper, provided it was used by him as a homestead, and after his death it passed to and vested in his widow and children, under the decision in Skouten v. Wood, supra, to the children to use until their majority and to the widow in fee, subject to such use by the children, and after the widow's death it passed to her heirs in fee to the exclusion of the husband's heirs. And this being so, of course it passed to her heirs without being subject to his debts, unless legally charged on the homestead during his lifetime.

Therefore, the husband's unsecured creditors could never subject the property used as a homestead to the payment of his debts either during his lifetime or at any time afterwards under the law of 1865.

The amendment of 1875 was not passed for the purpose of correcting any injustice done by the law of 1865 to the husband's creditors. As shown, that amendment was passed to correct the evil pointed out in Skouten v. Wood, of the property going to the widow's heirs, instead of to the housekeeper's heirs, after the termination of the homestead rights of the widow and children.

In other words, it was regard for the interests of the children and not to afford a new remedy to the creditors to collect

their debts out of the homestead property—a right they did not previously have—that prompted the Legislature to adopt the amendment of 1875. The lawmakers never dreamed that in adopting that amendment they were primarily benefiting the creditors. Nor did they intend, when so legislating for the benefit of the children, to so arrange it that before the children became of age, while they were yet minors, and as such the especial wards of the law because of their legal incapacity to transact business and to protect their property rights, that the creditors could levy upon and sell, for a mere pittance, the estate of their ancestor, subject to their right of occupancy until they attained their majority.

Yet if the decision in Poland v. Vesper, 67 Mo. 727, is the law, such is the result, and thus, instead of the act of 1875 benefiting the children, it will benefit the creditors of the ancestor, and when the children attain their majority they will have no more than they had under the law of 1865, as construed in Skouten v. Wood, when the fee went to the heirs of the widow.

I protest that such a construction nullifies the purpose and intention of the Legislature in passing the Act of 1875; that it holds out a promise to infants and breaks it when they become of age; that it makes the law declare that the homestead property can not be sold during the life of the homesteader, nor after his death for his debts unless legally charged thereon during his lifetime, but may be sold after his death, for the payments of debts which were not legally charged thereon during his lifetime, during the continuance of the homestead rights of the widow and children and before the majority of the children, subject to such homestead rights.

It may well be asked, of what practical benefit to the children is the Act of 1875 under such a construction? Before they are old enough to contract legally, or to know how to protect their interests—before they are entitled by law to man-

Keene v. Wyatt.

age or spend their own money—when they are still under guardianship—their fee in the property is allowed to be sold, almost necessarily for a song—as in this case. And this too in the face of the prime policy of the homestead laws of 1865 and 1875, that the homestead should not be subject to the payment of the debts of the deceased housekeeper unless legally charged thereon during his lifetime.

Such a construction frustrates the purpose of the Legislature in passing the Act of 1875, and creates just as great a failure of justice as was pointed out in Skouten v. Wood, and sought to be corrected by the Act of 1875.

But it is said that this is the *letter* of the Act of 1875, although not its spirit or purpose. If so, then to enforce the letter of the law when so manifestly at variance with its spirit and purpose, is to "stick in the bark," and courts never knowingly do so.

In Poland v. Vesper, supra, it was said that: "By this section it is the homestead right which is exempt from the payment of debts of the deceased—nothing more. After that is set out there remains an estate in the land which descends to the heirs of the deceased, and, by express provision of the statute, is subject to the laws relating to partition and sale for the payment of debts against the estate of the deceased."

If it be that the *letter* of the act is properly construed in the Poland case, and, as shown, that the reason of the law and the purpose intended by the law is quite the contrary, then, I insist, that the construction which gives effect to the reason and purpose of the act must prevail over a construction which gives effect only to the letter of the act. This has always been the rule in Missouri. [Riddick v. Governor, 1 Mo. 147; State ex rel. v. Emerson, 39 Mo. 80; State ex rel. v. King, 44 Mo. 283; Riddick v. Walsh, 15 Mo. 519; Ex parte Marmaduke, 91 Mo. 1. c. 254; State ex rel. v. Hostetter, 137 Mo. 636; State ex rel. v. Slover, 126 Mo. 652; St. Louis v. Lane, 110 Mo. 254; Railroad v. Gracy, 126 Mo. 472;

Bryant v. Russell, 127 Mo. 422; Conner v. Railroad, 59 Mo. 285; State ex rel. v. Field, 112 Mo. 554; Andrew Co. ex rel. v. Schell, 135 Mo. 31; Schultz v. Railroad, 36 Mo. 13; Ross v. Railroad, 111 Mo. 18; Carson-Rand Co. v. Stern, 129 Mo. 381. See also Sutherland on Statutory Construction, p. 288; U. S. v. Freight Ass'n, 166 U. S. l. c. 320].

It is also a rule of construction in this State that statutes must be construed in reference to the subject-matter, the objects which prompted and induced their enactment and the mischief they were intended to remedy. [Neenan v. Smith, 50 Mo. 525; Spitler v. Young, 63 Mo. 42; State ex rel. v. Diveling, 66 Mo. 375; Schultz v. Railroad, 36 Mo. 13].

"In determining disputed questions in its application it is often useful to recur to the objects and purposes of the law and to observe how far they may be promoted or defeated by the acceptance of any proposed construction of it. The reason of any law is its life, and a correct conception of its reason is oftentimes essential to a proper understanding of the meaning and tendency of the law itself." [Bank v. Skeen, 101 Mo. l. c. 687].

"The effects and consequences of any proposed construction of a law may properly be considered as an aid in ascertaining the probable intention of the lawgiver as expressed in it." [Kane v. Railroad, 112 Mo. 34; Bowers v. Smith, 111 Mo. 45; Chouteau v. Railroad, 122 Mo. 375; State ex rel. v. Slover, 126 Mo. 652].

"In the construction of a statute it is proper to consider the prior state of the law on the subject and all changes therein." [Gabriel v. Mullen, 111 Mo. 119; State ex rel. v. Hostetter, 137 Mo. 636].

"In determining the scope of a change in the statute, or of an amendment to it, it is often useful to consider the prior state of the law on the subject in order to reach the intent of the change made." [Dowdy v. Wamble, 110 Mo. 280; Greeley v. Railroad, 123 Mo. 157.]

Statutes should receive a reasonable construction so as to give effect to their intent, whether the construction is strict or liberal.  [Fosburgh v. Rogers, 114 Mo. 122.]

Homestead laws must be liberally construed.  [Voggler v. Montgomery, 54 Mo. 577.]

Though a statute is of a class which must be construed strictly, it must nevertheless be so construed as to give effect to the intention of the Legislature.  [Railroad v. Lewright, 113 Mo. 660.]

The state of the law prior to 1875 was that creditors could never have recourse against property used as a homestead—not during the life of the homesteader, and not after his death, for it passed to the widow and children, and after the death of the widow and the majority of the children it went to the heirs of the widow, and was expressly declared not to be subject to his debts unless legally charged thereon in his lifetime.

It has also been shown that the mischief to be cured by the Act of 1875 was that pointed out in Skouten v. Wood, of the fee passing to the heirs of the widow instead of to the heirs of the deceased housekeeper.

The reason, intention and purpose of the Act of 1875 have been demonstrated to be for the benefit of the children of the deceased housekeeper, and not to create a new remedy for his creditors.

The effects and consequences of allowing the property to be sold during the continuance of the homestead right so continued, and while the heirs are minors and without experience, without legal capacity to contract and without any money to protect their patrimony by paying off the debts of their ancestor, have been demonstrated to be that the minors would thereby lose all the benefits intended to be conferred on them by the Act of 1875, and the creditor would be enabled to buy the property for a song.  The creditor would have to wait until the termination of the homestead rights before he could get the

Vol 160 mo—2

fruits of his bargain, even under the construction adopted in the Poland case. It would not therefore be as great a hardship upon him to be required to wait until that time before selling the land, as it is to the heirs to allow the land to be sold for a song, while the heir is a minor and helpless to protect his rights. In fact the Poland case permits the creditor to speculate on the land at the expense of the minors, as was done in this case, where the land was appraised at $1,000, sold for $100, and afterwards re-sold by the purchaser for $1,000 and the second grantee mortgaged it for $1,000.

If, therefore, the letter of the Act of 1875 stands opposed to all these considerations, then I say that the letter of the law must yield to the reason, the spirit, the true intent, and to the effects and consequences of the law. For "in pursuing this course we do but follow well approved precedents, and allow the reason of the law to prevail over its letter, 'for the letter killeth but the spirit givéth life.' 2 Corinthians, 3:6." [Bingham v. Birmingham, 103 Mo. 352; State v. Bixman, not yet reported].

But I deny that the letter of the law authorizes a sale of the land during the continuance of the extended homestead rights.

Remember that prior to 1875 the land was not subject to sale for the debts of the deceased housekeeper, unless legally charged thereon in his lifetime. The amendment of 1875 did not change the law of 1865 which provided that upon the death of the housekeeper the homestead shall pass to and vest in the widow and children, "and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime." But the amendment of 1875 added, after the words just quoted, the words, "*until* the youngest child shall attain its legal majority, and until the death of such widow, and such homestead shall upon the death of such housekeeper or head of a family be limited to that period. But all the right, title and interest

of the deceased housekeeper in the premises, except the estate of the homestead thus continued, shall be subject to the laws relating to devise, descent, dower, partition and sale for the payment of debts against the estate of the deceased," etc.

There is not a word or letter in this act which says the land may be sold for the payment of the debts of the deceased during the continuance of the homestead rights subject to the homestead rights.    The whole section as it stands must be construed together and effect be given to all its parts if possible. The act first declares that the homestead shall not be *subject* to the payment of the debts of the deceased unless legally charged thereon in his lifetime, but shall pass to and vest in the widow and children, and shall continue for their benefit without being subject to his debts, etc., *until* the majority of the youngest child and the death of the widow.    "Until" is an adverb of time, and in this sentence the time referred to is the majority of the youngest child and the death of the widow, and it is expressly provided that until that time the homestead shall not be *subject* to the payment of his debts.    If it can be sold during that time but the sale is not to vest the purchaser with the right of possession until the termination of that time, then clearly it is subjected to sale for his debts before the expiration of the limited time, and the statute is not obeyed.

In the Poland case, however, a distinction was attempted to be drawn between the homestead estate and the fee in the land, and it was held that the statute only meant that the homestead estate could not be subjected to the payment of his debts, but that the fee might be.    There is no room for such a distinction.    The law of 1865 referred to the whole estate as the "homestead."    The Act of 1875 did not change the phraseology of that portion of the law of 1865.    What was meant by the term homestead in this section was the land, of the extent and value specified by section one of the law of 1865, which the head of a family might use and hold as a homestead, exempt from execution and attachment.

But even if the act is susceptible of being construed into separating the homestead estate from the fee, there is yet no word or letter of the act that says that the fee may be sold subject to the homestead estate. For by the terms of the act it can not be sold *until* the majority of the youngest child and the death of the widow. True the Act of 1875 provides that the right, title and interest of the deceased housekeeper, except the estate of homestead thus contained, shall be subject to the laws relating to devise, descent, dower, partition and sale for the payment of debts against the estate of the deceased, but it does not say *when* such interest shall be so subjected. It certainly does not say, as was said in the Poland case, that such interest might be sold subject to the homestead right. Inasmuch as it does not so expressly provide, and inasmuch as prior to this amendment it could not be sold at all for such debts, and inasmuch as to permit it to be sold during that time in that way would deprive the heirs of the deceased of the benefits intended to be conferred upon them by the Act of 1875, and would enable the creditor to speculate on the property at the expense of minors, whom it is the boast of courts that they protect, I hold, that no such construction should be placed upon the Act of 1875, and that the decision in the Poland case is wrong.

It is argued, however, that remainders in fee may be sold subject to a precedent life estate, and why not the fee subject to the homestead? The cases are not at all parallel. The remainder in fee is not sold for the payment of the debts of the ancestor, subject to a precedent life estate, but the whole estate (life estate as well as remainder) is subject to sale for the payment of the debts of the ancestor. And this is so because it was subject to sale in the hands of the deceased ancestor, and not exempt from sale for his debts as is the homestead. It will not do to apply the law as to general estates to the home-

stead, for the latter is a creature of the statute and belongs to a class unto itself.

It is argued, however, that if the fee can not be sold subject to the homestead rights of the widow and children, it will keep the administration on the deceased housekeeper's estate open for an indefinite number of years.    This is an argument *ab inconvenienti,* and like all arguments of that kind is dangerous ground to rest a rule of law upon.    But it is not true that it will keep such administration open.    The estate can and should be closed, without regard to this contingency.    After the terminatioin of the homestead rights a new administration *de bonis non* can be had as to such property.    By that time the heirs will be of age and can protect their property by paying the debts of their ancestor if they are able and see fit.    If not, the property can then be sold so as to make it bring its full value, and not be sacrificed as it would be if sold subject to the homestead.    Such a coürse would be no hardship upon the creditor.    For the creditor is generally the purchaser at the sale subject to the homestead, so that he does not realize on his claim until the terminatioin of the homestead right, any way. The trouble with the Poland case is that it is altogether in the interest of the creditor, and this, too, at the expense and to the ruin of the heirs, who are minors.    Whereas, the homestead law of 1865, and the Act of 1875, were passed primarily in the interest of the head of the family, and after his death in the interest of his widow and his children, and not for the purpose of aiding creditors to realize on their claims by subjecting the land to forced sale until after the termination of the homestead rights.

I deny that the lawmakers ever intended the land to be sold for the payment of debts during the continuance of the extended homestead right in the widow and children.

This view is supported by the decisions in other Statutes having similar statutory provisions.

Waples on Homestead and Exemption, section 11, page 493, says: "An administrator, duly licensed by a competent probate court, sold homestead lands subject to the exemption right of the decedent's widow and children, and the widow became the purchaser, and the sale was confirmed bv the court. She then sold the property. The heirs at law of the decedent sued the widow's vendee for the land. Judge COOLEY, in deciding the case, says that at the time of the death of the householder, 'his family were left residing upon the land, and for that reason it is claimed it could not be sold for the payment of debts. But the statute does not exempt the fee in the land as a homestead; it exempts the land only while it is occupied as a homestead by the widow and minor children. Subject to the homestead right, therefore, the lands are assets when needed for the payment of demands against the estate.' The widow had sold out and left, and the heirs had become of age before the suit was brought, so there was no one 'to raise the question of the homestead.' Drake v. Kinsell, 28 Mich. 232, 237. Had there been, perhaps the sale would have proved voidable; for the same learned jurist said of this case, when deciding a later one: 'It was not decided . . . . nor was it necessary to decide that the course adopted [by the probate court] was the most suitable. . . . . But at most a sale subject to the homestead right would be voidable on appeal; it would not be void.' Showers v. Robinson, 43 Mich. 502, 510. While the constitutional provisions are admitted to continue the exemption after the death of the owner during the minority of his children or during the widowhood of his surviving wife, 'they, by implication at least, recognize the estate of the late owner as having an interest in the homestead, which is assets, and which at some time and in some manner must be subject to be applied in the payment of debts, but they do not indicate the time or point out the means of making the application. Neither is there any statute that makes provision

for the case.' Ib. And it is queried whether lands can be rightfully sold to pay the debts of a decedent, subject to the homestead right. Weight is given to the argument *ab inconvenienti* drawn from the uncertainty of the duration of the homestead right, and the difficulty of estimating the value of the fee subject to that right. 'Selling the land under such circumstances is something like selling the contingent interest of the heir expectant, if that were salable," remarked the court. The conclusion seems to be that the course pursued in several other States (from which cases were cited Rottenberry v. Pipes, 53 Ala. 452, Burson v. Goodspeed, 60 Ill. 277, Wolf v. Ogden, 66 Ill. 224, Taylor v. Thorn, 29 O. St. 569), should be followed: that of holding the fee inalienable by the administrator while the homestead right rests upon the land. In the first case cited above by the court, in which a statute providing for the setting off of a homestead for the widow of a deceased debtor was under construction, it was declared that the Legislature had not meant that the land set off to her should be sold subject to her right of exemption, because such a course would be destructive to the creditor's rights, for purchasers would be loath to buy property subject to such an incumbrance. In the second case cited, it was held that an administrator could not sell the fee of homestead land subject to the widow's exemption right, but must await the termination of that right. In the third, that the administrator must apply for an order of sale soon after the termination, since otherwise license then to sell may be refused by the probate court. In the fourth, homestead lands were treated as assets of the estate after the homestead right had expired, but not liable to sale by the administrator, subject to that right, before the expiration."

The great weight of authority in this country is that the property can not be sold for the payment of the debts of the deceased housekeeper (unless specially charged with a lien during his lifetime) until the exemption in favor of the widow

and minor children for use as a homestead has been in some mode terminated, as by the death of the widow and the majority of the children and in some States by abandonment of the homestead. [Hartman v. Schultz, 101 Ill. 437; McCloy v. Arnett, 47 Ark. 445; Bond v. Montgomery, 56 Ark. 563; Harris v. Watson, 56 Ark. 574; Horton v. Hilliard, 58 Ark. 300; Oettinger v. Specht, 162 Ill. 179; Mueller v. Conrad, 178 Ill. 276; Rottenberry v. Pipes, 53 Ala. 447; Taylor v. Thorn, 29 Ohio St. 569; Showers v. Robinson, 43 Mich. 502; Zoellner v. Zoellner, 53 Mich. 620.] In Kentucky and Minnesota the rule is otherwise. [Phipps v. Acton, 12 Bush, 377; Derr v. Wilson, 84 Ky. 14; McGowan v. Baldwin, 46 Minn. 477.]

And in Mueller v. Conrad, 178 Ill. 276, it was held that even the consent of the widow to the sale would not validate it, as the fee in the premises can not be severed from the right of occupancy as the homestead. To the same effect also is Showers v. Robinson, 43 Mich. 502.

In Drake v. Kinsell, 38 Mich. 232, COOLEY, J., said the fee might be sold subject to the homestead rights of the widow and children. But the same question came before that court in Showers v. Robinson, 43 Mich. 502, in the same shape that the question is presented in this case, to-wit, by a bill in equity to cancel the deed made by the administrator. The lower court followed Drake v. Kinsell, and decided in favor of the defendant, but the Supreme Court reversed that judgment and directed a judgment for the plaintiff, and COOLEY, J., who had decided the Drake case, rendered the opinion of the court, and so clearly and conclusively reasoned out the case that I adopt his opinion on this question bodily:

"The question then is whether the right asserted by the plaintiff does bring in question the validity of the administrator's sale, so that to sustain the suit will defeat the purchase. Indirectly the right to make the sale at all is involved.

Keene v. Wyatt.

"The constitutional provisions exempting a homestead from forced sale for the payment of debts are given in the margin. It will be seen on referring to them that they continue the exemption after the death of the owner during the minority of his children or during the widowhood of his surviving wife. By implication at least they recognize the estate of the late owner as having an interest in the homestead, which is assets, and which at some time and in some manner must be subject to be applied in payment of debts, but they do not indicate the time or point out the means of making the application. Neither is there any statute which makes provision for the case. It might be urged with much reason that the fee subject to the homestead is liable to be sold immediately, like any other contingent or future vested interest; and it is perhaps difficult to give full effect to all the statutory provisions respecting the settlement of the estates of deceased persons without so holding. Those provisions require estates to be closed and the personal representatives to be discharged in a very short period; allowing only eighteen months at first (Comp. L., sec. 4450), and permitting extensions to four years only in all (Comp. L., sec. 4451). All claims against the estate are barred which are not presented and proved before the administrator is discharged (Brown v. Forsche, ante, p. 492) ; and we have no statute and no precedents for afterwards pursuing the estate in the hands of distributees or others who have succeeded to it. It does not therefore appear that any method of reaching the fee subject to the exemption has been within legislative contemplation, except through a sale made within the short time allowed for the settlement of the estate.

"But a sale thus made is likely in many cases to be ruinous to the estate, from the great uncertainty attending the continuance of the homestead right, and the consequent impossibility of finding elements of certainty whereby to determine the value of the fee subject to it. Selling the land under such cir-

Keene v. Wyatt.

cumstances is something like selling the contingent inheritance of the heir expectant, if that were salable : the one like the other depends partly upon the continuance of life, and partly upon the will and discretion of a party having a present interest. A widow entitled with her minor children to a homestead may live and claim the enjoyment of it for twenty or even fifty years, or she may die, leaving no children, in one year, or she may at once abandon the homestead right and remove with her children to a distant State, because she finds it for her interest to reside elsewhere. The elements of value in the fee under such circumstances are so exceedingly uncertain that it is highly improbable there could be any competition in a sale except perhaps of those who would bid for the land only what it would be worth in the contingency most unfavorable to the purchaser. A sale of anything of such uncertain value must almost of a necessity be a sale at a great sacrifice. [Rottenberry v. Pipes, 53 Ala. 452.]

"In Bursen v. Goodspeed, 60 Ill. 277, it was held to be proper to refuse to permit a sale of the fee by the administrator, subject to the homestead right of the widow, and that the administrator might delay until the homestead right had terminated, and obtain an order for a sale then. The lapse of time in that case between the issue of letters and the grant of license to sell was eleven years. But the administrator must move promptly after the homestead right ceases, or the claims will be declared void and license to sell be refused. [Wolf v. Ogden, 66 Ill. 224. See, also, Booth v. Goodwin, 29 Ark. 636.] In Taylor v. Thorn, 29 Ohio St. 569, a view was taken very similar to that which obtains in Illinois. In that case a homestead right existed which was left untouched by administration, and the administrator settled his accounts in 1854. But in 1876, after the homestead right had terminated, he was permitted to sell the lands as further assets to satisfy debts before unpaid. 'When such assets would become available,'

say the court, 'was to some extent uncertain; for while the homestead right would certainly end at the becoming of age of all the minor children, it might terminate by their death; and upon its termination the creditors would be entitled to the further assets to be derived from the sale of the premises which had been so occupied.' In Iowa, by the express terms of the statute, the homestead is only subject to be sold for the debts of the deceased owner in cases where there is no surviving husband, wife or issue. [Johnson v. Gaylord, 41 Iowa 362.]

"In Drake v. Kinsell, 38 Mich. 232, an administrator sold lands in which there was a homestead right, and they were bid in by the widow. The validity of the sale was attacked, but it had been duly licensed by the probate court and was therefore not void (Woods v. Monroe, 17 Mich. 238; Griffin v. Johnson, 37 Mich. 87, 91), and no party interested had appealed. The widow, after her purchase, had sold the land and removed from the premises, and it was not pretended that the homestead right existed afterwards. The court, in deciding that the sale could not be attacked collaterally, say: 'The statute does not exempt the fee in the land as a homestead; it exempts the land only while it is occupied as a homestead by the widow and minor children. Subject to the homestead right, therefore, the lands are assets when needed for the payment of demands against the estate. In this case the widow became the purchaser; and when she sold and left the land . . . . . . . we do not see how any one was in position to raise the question of a homestead.' But it was not decided in that case, nor was it necessary to decide, that the course adopted was the most suitable. It seems plain that the practice followed in Illinois and Ohio is more for the interest of all concerned, and if an application for a sale subject to the homestead right should be contested, it is probable that some method would be found, not inconsistent with the statutes, of so dealing with the case as to protect at once the interests of the family

Keene v. Wyatt.

and of the creditors. But at most a sale subject to the home-stead right would be voidable on appeal; it would not be void.

"This case is like Drake v. Kinsell in some of its features, and in others it is essentially different. In this case as in that, land was sold by the administrator in which there was a home-stead right. Here also there was no appeal from the order of sale, and the time for appeal had long expired. But in this case the homestead right is still insisted upon, while the pur-chaser insists that it was extinguished, either by the sale itself or by the concurrent or subsequent acts of the widow. That the sale alone would not cut it off we may affirm on the express provisions of the Constitution; and we have only to see whether any acts of the widow have terminated the rights of herself and of her children."

The learned judge then held that the widow had not waived or lost her right to maintain the action, either because she had dower assigned her in the same lands or because her allowed claim against the estate had been paid out of the proceeds of the sale of the homestead or because she had abandoned the homestead, for she could not abandon it *quoad* the children's rights, and then concluded the opinion as fol-lows: "We find nothing in the record that should have pre-cluded the plaintiff's recovery. The judgment must be re-versed with costs, and a new trial ordered." If this opinion had been written for the case at bar it could not have fitted it better.

Thus we have the reason, the purpose, the intention, the effects and consequences, the mischiefs intended to be cured, and the spirit and policy of the law, together with the great weight of authority in other jurisdictions, with the authority of the latest recognized text-writer on the subject, all holding, as I maintain in this case, that the fee can not be sold subject to the homestead rights of the widow and children, but a sale

thereof must be postponed until those homestead rights are terminated.

But this is not all.   We have a clear legislative construction of what the lawmakers intended by Act of 1875, in the Act of 1895.

The Act of 1895 (Acts 1895, p. 186) struck out of the Act of 1875 the words, "And such homestead shall, upon the death of such housekeeper or head of a family, be limited to that period; but all the right, title and interest of the deceased housekeeper, or head of a family, in the premises, except the estate of the homestead thus continued, shall be subject to the laws relating to devise, descent, dower, partition and sale for the payment of debts against the estate of the deceased," and in lieu thereof inserted the following: "that is to say, the children shall have the joint right of occupancy with the widow, until they shall arrive, respectively, at their majority, and the widow shall have the right to occupy such homestead during her life or widowhood, and upon her death or remarriage it shall pass to the heirs of the husband."

As the Act of 1875 was passed to cure the mischief of the property going to the heirs of the widow, to the exclusion of the heirs of the husband, after the termination of the homestead rights, and was prompted by the decision in Skouten v. Wood, so the Act of 1895 was passed to cure the evil of having the fee sacrificed by being sold subject to the homestead rights of the widow and children, before the termination of such extended homestead, and was prompted because of the erroneous construction put upon the Act of 1875 by the case of Poland v. Vesper and the cases that have followed it.   The Act of 1895 is a clear legislative declaration that the lawmakers did not intend by the Act of 1875 what this court held in the Poland case to be the meaning of that act.

For these reasons I think the case of Poland v. Vesper, 67 Mo. 727, did not correctly declare the law and should be overruled, and for the reason that the decision of the circuit

court in this case followed the Poland case, it should also be held erroneous, and be reversed.

## II.

It is argued, however, that the Poland case has become a rule of property in this State, and, upon the doctrine of *stare decisis* should be followed in this case.

The doctrine of *stare decisis* has its uses and its abuses. But even that doctrine is not followed where a palpable wrong or injustice would be done, or where the mischiefs to be cured far outweigh any injury that might be done in a particular case by overruling prior decisions. Sutherland on Statutory Construction, section 317, says: "The two grounds of justification in departing from even a single decision which has become a general rule of property within a certain line of dealing, are, first, the necessity of preventing further injustice; second, the necessity of vindicating clear and obvious principles of law."

In Pattison's Complete Digest there is a list of cases which have been decided and afterwards overruled by this court, which covers nineteen double-column pages. In Bealey v. Smith, 158 Mo. 515, I collated a few cases wherein this court had overruled prior decisions even in the same case. It is not necessary, however, to go outside of the decisions of this court construing this same homestead law, to show that no consideration of *stare decisis* has prevented this court from overruling prior decisions relating thereto which were quite as ancient and had become just as much a rule of property, as is now claimed for the Poland case.

At first, this court in construing section 1 of the law of 1865 (section 2689, Revised Statutes 1879; section 5435, Revised Statutes 1889) held that the land might be sold during the lifetime and occupancy of the head of a family, subject to the homestead right, and also that the failure of the sheriff

to notify the head of the family of his right to exemption and to set it off to him did not render the sale void, and that the householder waived his exemption if he did not claim it before the sale. [Crisp v. Crisp, 86 Mo. 630; Thompson v. Newberry, 93 Mo. l. c. 25; Casebolt v. Donaldson, 67 Mo. 308; Bunn v. Lindsay, 95 Mo. 250.]

But these cases upon further consideration were overruled. [Peake v. Cameron, 102 Mo. 568; Macke v. Byrd, 131 Mo. 691; Ratliff v. Graves, 132 Mo. 76; Grimes v. Portman, 99 Mo. 229; Bank of Versailles v. Guthrey, 127 Mo. 189.]

In the Guthrey case BURGESS, J., said, "There is no such thing under our laws as subjecting the fee in the land, subject to the homestead right or interest, to seizure and sale under attachment, execution, or by proceeding in equity, upon the ground that it had been fraudulently or otherwise disposed of. If it is not the subject of sale under attachment or execution before such disposition, it is difficult to see how it becomes so by reason of such transfer. No creditor has any interest therein, it can not be subjected to the payment of his debt until after the homestead right expires by law, and certainly he has no right to complain of a transaction in which he has no interest. To hold that the fee in the homestead may be subjected to the payment of the debts of its owner, subject to the homestead right, is to deprive him of the right which is expressly conferred by statute, to sell, mortgage or exchange it for another homestead, a contention to which we are unwilling to give our assent. The homestead includes the fee; they are not two separate and divisible interests."

And in Ratliff v. Graves, 132 Mo. 76, the opinion of the court, concurred in by BRACE, C. J., and BARCLAY, MACFARLANE and ROBINSON, JJ., followed Macke v. Byrd, 131 Mo. 682, and was as stated in the syllabus: "The purchase on execution of property, in use by the judgment defendant as a

homestead, does not pass the title subject to the intervening estate of homestead."

The doctrine of *stare decisis* did not prevent this court from overruling its prior decisions, cited, holding that the homestead could be sold during the life of the housekeeper, subject to his homestead rights, notwithstanding these prior decisions had become as much a rule of property as the Poland case has.    By the same principle and measure I insist that as the Poland case is clearly wrong, and as the mischiefs to be cured far outweigh any injury that might be done by overruling that case, this court ought to follow the precedent set by Judge COOLEY of correcting his first mistake, or to bring it closer home, it ought to do in this case, for the benefit of babes and minors, as much as it did in the cases above cited, for the benefit of the householder, who was *sui juris;* set aside all prior erroneous decisions and declare the true law.    This course will injure no one, for if the sale is void the creditor still has his claim and can assert it after the termination of the homestead right, and if a third person purchased at the sale, he will be subrogated to the right of the creditor and may enforce it after the expiration of the homestead right.    [Bond v. Montgomery, 56 Ark. 563.]    On the contrary it will be a step in the interest of the children, who are the special wards of the law, helpless because they can not contract or use any money they have to protect their interest in the fee, and will carry out the prime purpose of the lawmakers, which, in all these amendments, has been to benefit the minors.    What I ask is supported by reason, justice to all parties, precedent in other States, the spirit and policy of the law, and the purpose and intention of the lawmakers in adopting, and from time to time amending, the homestead law in favor of the heirs, and is, I submit, the proper and consistent and manly course to follow. If there ever was a case where the doctrine of *stare decisis* should not apply, it is the case at bar, for, as pointed out, it

will not injure the creditors of the deceased or the purchaser at the administrator's sale, and will give the children a chance when they become of age to save their patrimony by paying off the debt of their ancestor, instead of losing that patrimony, which was appraised in this case at one thousand dollars and sold for only one hundred dollars. The difference, nine hundred dollars, is the loss to the heirs, and the unconscionable gain of the purchaser at the administrator's sale, for he immediately resold the property for one thousand dollars.

For these reasons I think the court should rise to the occasion, strike down the Poland case, and do justice to the heirs, without doing injury to the creditors, by holding that the fee can not be sold until the termination of the homestead rights of the widow and children, which, of course, would result in reversing, without remanding, the judgment of the circuit court in this case.