## LYDIA W. SHOWERS v. GEORGE W. ROBINSON AND JOHN STANTON.

*Estates of decedents—Dower and homestead—Estoppel—Suits for recovery of land held under probate sales—Limitations.*

The statute which limits the time for bringing suits for the recovery of land held under probate sales, to five years, only applies to cases in which the suit brings in controversy the validity of such a sale. If the plaintiff's title is such that the probate sale is immaterial to it, the statute has no application.

The claim of a widow to a homestead right, in behalf of herself and her children, does not bring in question the validity of an administrator's sale of the same land to pay debts of the intestate, since the sale must be deemed made subject to the homestead right.

Whether lands can rightfully be sold to pay debts of a decedent, subject to a homestead right, *quære*. If such sale is ordered and made, however, it is not absolutely void, and cannot be attacked collaterally, but is only voidable on appeal.

A widow may have dower set off in lands which are subject to a homestead right, and this will not estop her from claiming the homestead afterwards.

A widow is not estopped from claiming a homestead in lands by the fact that she desired its sale for the payment of debts, and requested a party to buy the land, and received from the proceeds the amount of a claim allowed in her favor. Estoppel *in pais* has no application to interests in lands. Moreover, it must be presumed that the sale the widow desired was a sale subject to the homestead.

The acts of the widow in moving away from the homestead for a time, or in neglecting to claim it, cannot deprive the minor children of the right to claim it. If she neglects or refuses to assert their claim, it may be done by some other proper representative.

Minor children are not necessary parties to a suit brought by the widow, their mother, to recover the homestead, though it is proper to join them.

Error to Van Buren. Submitted April 9. Decided June 9.

EJECTMENT. Plaintiff brings error.

*Lester A. Tabor* for plaintiff in error. Dower and homestead rights may exist in the same premises; *Chis-*

*olm v. Chisolm* 41 Ala. 327; *Jordan v. Strickland* 42 Ala. 315; *McCuan v. Turrentine* 48 Ala. 70; *Walsh v. Reis* 50 Ill. 477; *Bursen v. Goodspeed* 60 Ill. 281; *Bresee v. Stiles* 22 Wis. 120; *Mercier v. Chace* 11 Allen 194; *Monk v. Capen* 5 Allen 146; *Bates v. Bates* 97 Mass. 392; *Merriman v. Lacefield* 4 Heisk. 222; *Chaplin v. Sawyer* 35 Vt. 290; *Doane v. Doane* 33 Vt. 649; *Wallace v. Harris* 32 Mich. 380.

*Brown, Howard & Roos* for defendant in error.

COOLEY, J. The plaintiff is the widow of Jacob Showers, and the mother of his three infant children who reside with her. As such widow and mother she brings ejectment to recover that part of the southwest quarter of the southeast quarter of section thirty-two in town three south of range thirteen west, Van Buren county, which lies west of a highway running through the same. Defendants are in possession of the land, and claim it by virtue of a sale made by the administrator of Jacob Showers under a license from the probate court. The highway divides the forty-acre lot above described into two parcels, the east one of which, containing six or seven acres, is occupied by the plaintiff, it having been set off to her as her dower. The west parcel, now in controversy, contains some thirty acres.

The plaintiff was married to Jacob Showers in 1856. In the same year he became owner of this forty-acre lot, and moved with his wife upon it. From that time they occupied it as their homestead until he died in 1869. Charles M. Monell was appointed administrator on the estate of Showers soon after his death, and took possession as such of the land west of the highway. The other parcel was assigned to the widow as her dower in 1870, on her petition. In 1872 the widow moved off the parcel so assigned to her as dower, into a village half a mile distant. She claims to have done this at the request and under the advice of the judge of probate and administrator.

When Showers died he left no personal property available for the payment of his debts. The claims allowed against his estate amounted to $642.82, including one in favor of the plaintiff of $154.80. The administrator made sale of the premises in controversy in 1873, and they were bid in by defendant Robinson for $1275. There was evidence in the case that plaintiff requested Robinson to make this purchase, and she afterwards applied in the probate court and had the administrator summoned to render his account of the proceeds. Her own claim was paid to her. This suit was begun in 1878, a little over five years from the time Robinson made his purchase. The case was tried by jury, and the jury under instructions of the judge to be noticed further on, returned a verdict for defendants.

I. It is claimed on the part of the defense that the action was barred by sections 4594 and 7137 of Compiled Laws. The first of these provides that "no action for the recovery of any estate sold by an executor or administrator under the provisions of this chapter shall be maintained by any heir or other person claiming under the deceased testator or intestate, unless it be commenced within five years next after the sale." The second requires the action to be brought within five years after the right accrues, "where the defendant claims title to the land in question, by or through some deed made upon a sale thereof by an executor, administrator, or guardian, or by a sheriff or other proper ministerial officer, under the order, judgment, decree, or process of a court, or legal tribunal of competent jurisdiction within this State." These are broad provisions, and seem on first reading to embrace every possible case in which the defendants' title is derived through a probate sale. But one would be at a loss if he were in search of reasons for adopting provisions so comprehensive in meaning and scope. It cannot have been the purpose to impart any peculiar sacredness to a title derived under judicial proceedings,

and to give it a preference in protection over one that had always been transferred by the voluntary conveyances of parties assuming to be owners. If, for example, two persons were to disseize another of different parcels of his land at the same time, and the possession of one should be transferred to a purchaser by execution sale, and that of the other to a person accepting the disseizor's own conveyance, it would be impossible to assign any sensible reason why the owner should pursue his remedy against one any more speedily than against the other. Each purchaser from a trespasser would himself be a trespasser, and one could have no equity entitling him to the favor of the law more than the other. Moreover statutes of limitation have regard specially to the laches of the owner, and they deny him a remedy for the recovery of his rights because he has failed to pursue them within a reasonable time. *Toll v. Wright* 37 Mich. 93. But a time that is only reasonable for pursuing a disseizor cannot become unreasonable by the mere fact that the disseizor's possession is taken from him under a judicial sale to which the owner is in no sense a party: the law imposes upon the owner no obligation to take notice of or follow the changes and transfers which are made among those who are trespassing upon his rights. His equity is the same against the second as against the first, and survives as long; and he is only concerned in ascertaining who is the wrong-doer at the time he seeks his legal redress.

There are parties, however, who as against purchasers at judicial sales, may well be required to move with the utmost promptitude. The case of heirs whose inheritance is sold for the payment of debts of their ancestor is such a case. The heirs are parties to the proceedings which result in such sales, and they are seldom ignorant of the several steps as they take place. If they believe these steps have not been taken in conformity with the law, and desire to contest the sale, they may justly be required to do so speedily, while the proceedings

are recent and while mere errors or accidental omissions may perhaps be corrected. This is particularly true of such cases because the purchaser, if through the error of others he loses the land which he has bought in good faith, ought to have some remedy for the recovery of the money paid; and this he is not likely to find after any considerable delay. It is probable that one reason for the enactment of these short statutes of limitations was that under the former law, when the validity of judicial sales might be contested at any time within twenty years after the taking of possession under them, it sometimes happened that heirs by calculated delay first suffered the ancestor's estate to be cleared of debts by administrator's sales which they left undisputed and undisturbed until it had become too late for the purchasers to obtain indemnity, and then recovered back the land which had paid the debts, by taking advantage of errors in the proceedings. Even where this injustice was not originally contemplated, it often resulted; and it was eminently just and proper that a short statute of limitations should exist for such cases.

But to render the reason of these statutes applicable, the possessor must not only claim title through some judicial sale, but it must be the validity of this title which is in controversy between him and the plaintiff, and the subject-matter of the issue to be tried. It is when the plaintiff contests such a sale, that he is required to move promptly. But if the nature of the plaintiff's right is such that it is immaterial to him whether a probate sale is regular or irregular, and he claims to recover on grounds that leave that sale out of view, the statutes can have no application to his case, because the reasons on which they are enacted are absent. The intent of these statutes is that the sales therein enumerated shall not be brought in question and contested because of defects after the time named therein has elapsed; and they cannot be applied to a case in which the plaintiff concedes, or has no occasion to question the judicial sale.

II. The question then is whether the right asserted by the plaintiff does bring in question the validity of the administrator's sale, so that to sustain the suit will defeat the purchase. Indirectly the right to make the sale at all is involved.

The constitutional provisions exempting a homestead from forced sale for the payment of debts are given in the margin.* It will be seen on referring to them that they continue the exemption after the death of the owner during the minority of his children or during the widowhood of his surviving wife. By implication at least they recognize the estate of the late owner as having an interest in the homestead, which is assets, and which at some time and in some manner must be subject to be applied in payment of debts, but they do not indicate the time or point out the means of making the application. Neither is there any statute which makes provision for the case. It might be urged with much reason that the fee subject to the homestead is liable to be sold immediately, like any other contingent or future vested interest; and it is perhaps difficult to give full effect to all the statutory provisions respecting the settlement of the estates of deceased persons without so holding. Those provis-

---

*ARTICLE XVI.

SEC. 2. Every homestead of not exceeding forty acres of land, and the dwelling-house thereon, and the appurtenances to be selected by the owner thereof, and not included in any town plat, city or village; or instead thereof, at the option of the owner, any lot in any city, village, or recorded town plat, or such parts of lots as shall be equal thereto, and the dwelling-house thereon, and its appurtenances, owned and occupied by any resident of the State, not exceeding in value $1,500, shall be exempt from forced sale on execution or any other final process from a court, for any debt contracted after the adoption of this Constitution. Such exemption shall not extend to any mortgage thereon, lawfully obtained; but such mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same.

SEC. 3. The homestead of a family, after the death of the owner thereof, shall be exempt from the payment of his debts contracted after the adoption of this Constitution, in all cases, during the minority of his children.

SEC. 4. If the owner of a homestead die, leaving a widow but no children, the same shall be exempt, and the rents and profits thereof shall accrue to her benefit during the time of her widowhood, unless she be the owner of a homestead in her own right.

ions require estates to be closed and the personal representatives to be discharged in a very short period; allowing only eighteen months at first (Comp. L. § 4450), and permitting extensions to four years only in all, Comp. L. § 4451. All claims against the estate are barred which are not presented and proved before the administrator is discharged (*Brown v. Forsche* ante, p. 492, just decided); and we have no statute and no precedents for afterwards pursuing the estate in the hands of distributees or others who have succeeded to it. It does not therefore appear that any method of reaching the fee subject to the exemption has been within legislative contemplation, except through a sale made within the short time allowed for the settlement of the estate.

But a sale thus made is likely in many cases to be ruinous to the estate, from the great uncertainty attending the continuance of the homestead right, and the consequent impossibility of finding elements of certainty whereby to determine the value of the fee subject to it. Selling the land under such circumstances is something like selling the contingent inheritance of the heir expectant, if that were salable: the one like the other depends partly upon the continuance of life, and partly upon the will and discretion of a party having a present interest. A widow entitled with her minor children to a homestead may live and claim the enjoyment of it for twenty or even fifty years, or she may die, leaving no children, in one year, or she may at once abandon the homestead right and remove with her children to a distant State, because she finds it for her interest to reside elsewhere. The elements of value in the fee under such circumstances are so exceedingly uncertain that it is highly improbable there could be any competition in a sale except perhaps of those who would bid for the land only what it would be worth in the contingency most unfavorable to the purchaser. A sale of anything of such uncertain value must almost of necessity be a sale at a great sacrifice. *Rottenberry v. Pipes* 53 Ala. 452.

In *Bursen v. Goodspeed* 60 Ill. 277, it was held to be proper to refuse to permit a sale of the fee by the administrator, subject to the homestead right of the widow, and that the administrator might delay until the homestead right had terminated, and obtain an order for a sale then. The lapse of time in that case between the issue of letters and the grant of license to sell was eleven years. But the administrator must move promptly after the homestead right ceases, or the claims will be declared void and license to sell be refused. *Wolf v. Ogden,* 66 Ill. 224. See also *Booth v. Goodwin* 29 Ark. 636. In *Taylor v. Thorn* 29 Ohio St. 569, a view was taken very similar to that which obtains in Illinois. In that case a homestead right existed which was left untouched by administration, and the administrator settled his accounts in 1854. But in 1876, after the homestead right had terminated, he was permitted to sell the lands as further assets to satisfy debts before unpaid. "When such assets would become available," say the court, "was to some extent uncertain; for while the homestead right would certainly end at the becoming of age of all the minor children, it might terminate by their death; and upon its termination the creditors would be entitled to the further assets to be derived from the sale of the premises which had been so occupied." In Iowa by the express terms of the statute the homestead is only subject to be sold for the debts of the deceased owner in cases where there is no surviving husband, wife or issue. *Johnson v. Gaylord* 41 Iowa 362.

In *Drake v. Kinsell* 38 Mich. 232 an administrator sold lands in which there was a homestead right, and they were bid in by the widow. The validity of the sale was attacked, but it had been duly licensed by the probate court and was therefore not void (*Woods v. Monroe* 17 Mich. 238; *Griffin v. Johnson* 37 Mich. 87, 91), and no party interested had appealed. The widow, after her purchase, had sold the land and removed from the premises, and it was not pretended that the homestead right

existed afterwards. The court, in deciding that the sale could not be attacked collaterally, say: "The statute does not exempt the fee in the land as a homestead; it exempts the land only while it is occupied as a homestead by the widow and minor children. Subject to the homestead right, therefore, the lands are assets when needed for the payment of demands against the estate. In this case the widow became the purchaser; and when she sold and left the land * * we do not see how any one was in position to raise the question of a homestead." But it was not decided in that case, nor was it necessary to decide, that the course adopted was the most suitable. It seems plain that the practice followed in Illinois and Ohio is more for the interest of all concerned, and if an application for a sale subject to the homestead right should be contested, it is probable that some method would be found, not inconsistent with the statutes, of so dealing with the case as to protect at once the interests of the family and of the creditors. But at most a sale subject to the homestead right would be voidable on appeal; it would not be void.

This case is like *Drake v. Kinsell* in some of its features, and in others it is essentially different. In this case as in that, land was sold by the administrator in which there was a homestead right. Here also there was no appeal from the order of sale, and the time for appeal had long expired. But in this case the homestead right is still insisted upon, while the purchaser insists that it was extinguished, either by the sale itself or by the concurrent or subsequent acts of the widow. That the sale alone would not cut it off we may affirm on the express provisions of the Constitution; and we have only to see whether any acts of the widow have terminated the rights of herself and of her children.

III. There are several acts of the plaintiff which, taken together or severally, are supposed to constitute a waiver of the homestead right:

*First.* She had her dower set off in one part of these

lands. But under our statutes the right in dower and the homestead right are not,so far inconsistent that a claim of the one is a denial of the existence of the other. *Dei v. Habel* 41 Mich. 88. Dower is an estate for life, and may continue after the homestead right has ceased. It is also the subject of alienation, while the homestead interest could only be released to the owner of the fee; and the widow has therefore a sensible interest in having her dower set off, even though there be no land beside the homestead to which dower would attach. But if the two rights were inconsistent, the fact would be immaterial in this case. That portion of the forty acres not set off as dower would not lose its character as a homestead by reason of the dower being carved out of it. It would still remain a part of the home possession, for the support of the widow and children, no further removed from the mansion house, and no less a part of the homestead, in the common understanding or, as we think, in law, than it was before. *Perkins v. Quigley* 62 Mo. 498; *West River Bank v. Gale* 42 Vt. 27; *Buxton v. Dearborn* 46 N. H. 43.

*Second.* The plaintiff proved a claim against the estate which could only be paid by means of a sale of this land, and when the sale had taken place, she received payment from the proceeds. There is also some evidence that she urged Robinson to become the purchaser. In respect to these acts the circuit judge charged the jury that if the plaintiff induced the administrator to sell the land for the purpose of paying the indebtedness of the estate, or if she induced its purchase by Robinson, or was instrumental in inducing him to purchase, that act by itself would preclude her from recovering. She would not thereafter be suffered to claim as against him that the land constituted a homestead.

If the land was liable to be sold subject to the homestead right, this instruction must be erroneous. It must be intended in that case that plaintiff desired, solicited and induced a sale of the fee with the homestead right

left intact; that it was such a sale she had in her mind whether she was so understood or not; and that if Robinson supposed he was acquiring an unencumbered fee, he was misled by an ignorance of the law for which there is no remedy. But if this were otherwise the instruction would be equally erroneous.

The right of homestead exemption was intended by the people in adopting the Constitution to be as sacred as the right of dower, and from similar considerations of public policy. *Hoskins v. Litchfield* 31 Ill. 143; *Lœb v. McMahon* 89 Ill. 487; *Regan v. Zeeb* 28 Ohio (N. S.) 483. The Constitution indicates how it may be parted with, and negatives its being done in any other manner so long as the characteristics which make it a homestead remain. *Beecher v. Baldy* 7 Mich. 488; *Dye v. Mann* 10 Mich. 291; *Abbott v. Cromartie* 72 N. C. 292; *Littlejohn v. Egerton* 76 N. C. 468; *Warner v. Crosby* 89 Ill. 320. The most positive parol promise to sell the homestead or not to claim it is void in law even though the consideration may be ample (*Ring v. Burt* 17 Mich. 465; *Clark v. Evarts* 46 Iowa 248); and if Robinson had been assured by the plaintiff at the time he was making his purchase that she would make no claim to a homestead, she would nevertheless have been at liberty to make it, for the very manifest reason that the statute makes void all attempts to transfer interests in land without writing. *Wright v. DeGroff* 14 Mich. 164; *Hayes v. Livingston* 34 Mich. 384; *Nims v. Sherman* ante, p. 45. Even where the wife unites in the husband's deed, it will be wholly inoperative for the purposes of a release unless it conforms in its requisites to the statute. *Vanzant v. Vanzant* 23 Ill. 537; *Fisher v. Meister* 24 Mich. 447; *Connor v. McMurray* 2 Allen 202; *Hoge v. Hollister* 2 Tenn. Ch. 606; *Dickinson v. McLane* 57 N. H. 31; *Cross v. Everts* 28 Texas 532; *Barnett v. Mendenhall* 42 Iowa 296.

But if the doctrine of estoppel by acts *in pais* could be so applied in any case as to transfer or extinguish rights which the law provides shall pass by writing only,

the circumstances of this case would preclude it. One may sometimes by his conduct estop himself from claiming rights on his own behalf, but he cannot in that way cut off or take away the rights of others. And in this case the homestead right belonged to the children quite as much as to the mother: it was given as much or more for their benefit; and she could not by the most positive contract or conveyance have precluded their claiming it. It seems unnecessary to say that what she could not do by formal instruments she must be at least equally powerless to do by mere word of mouth. It is true that she might have it in her power to deprive the land of the qualities of a homestead by moving with the children away from it and making a home elsewhere, but that is altogether another matter, and presents other questions. *Miller v. Marckle* 27 Ill. 405; *Whittle v. Samuels* 54 Ga. 548; *Johnston v. Turner* 29 Ark. 280.

The defendants insist that there was an abandonment of the homestead right by the plaintiff in this case when she moved into the village. But if the plaintiff is believed in her testimony she moved under the advice of those on whom she had reason to rely in matters pertaining to the estate, and without any intention of abandoning a known right. If such was the case there was in law no abandonment. *Bunker v. Paquette* 37 Mich. 79; *Campbell v. Adair* 45 Miss. 170; *Tumlinson v. Swinney* 22 Ark. 400; *Howard v. Logan* 81 Ill. 383; *Moss v. Warner* 10 Cal. 296; *Jackson v. Reid* 32 Ohio St. 443. But an abandonment by the widow would not take from the minor children the right to occupy the land as a homestead, and they might return for the purpose. Indirectly this is recognized in *Griffin v. Johnson* 37 Mich. 87, 92, where it is said that the widow uniting with the administrator in a mortgage of the homestead will not affect the rights of minor children. In *Allen v. Shields* 72 N. C. 504, it was held that minor children should be protected in their homesteads, notwithstanding the failure of their guardian *ad litem* to claim it in a suit against

43 MICH.—65.

them.    Still more should they be protected against any attempt of the widow to surrender their rights, when the surrender appears not to be for their interest.    A step-mother might attempt this fraudulently or collusively, or the true mother from error in judgment; but even if in either case the widow refused to return, the children must be entitled to redress.    With a home set apart for them by the Constitution, it cannot be at the option of a heartless or foolish mother to take it from them and render them homeless; but a guardian might recover on their behalf what she refused to demand.    If, however, she comes herself for the purpose, having kept the children together as a family, she is manifestly the most proper person to act as their representative and in their interest in restoring them to the occupation of the homestead, and the enjoyment of their rights therein.

IV.    It is objected that the children were necessary parties plaintiff in the suit, but we think not.    There would have been no harm in joining them.    *Burt v. Box* 36 Texas 114.    Had the widow refused to bring suit, they might have done so.    But the widow, when the children live with her, is entitled to the possession of the whole land, not of an undivided interest merely; and may sue for its recovery alone.    *Miles v. Miles* 46 N. H. 261.

We find nothing in the record that should have precluded the plaintiff's recovery.    The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.