*In re* EMMONS' ESTATE.

1. HOMESTEAD—SURVIVING WIDOW—DEBTS—LIABILITY OF HOMESTEAD.

A homestead may be subjected in proper proceedings to payment of the debts of the deceased owner, though it does not fall into the estate before the time limited by statute for closing the estate, or before the time when the estate is actually closed.

2. SAME—RIGHTS OF CREDITORS—LACHES.

Where a widow remarried before the estate of her deceased husband, who had owned a homestead worth not more than $1,500, had been closed, and all those interested had knowledge of the cessation of the homestead right, an unexcused delay on the part of creditors for more than six years after the closing of the estate prevents them from enforcing their claims against the homestead.

Error to Lapeer; Smith, J. Submitted November 15, 1905. (Docket No. 136.) Decided December 15, 1905.

William Gaskill, administrator de bonis non of the estate

of B. Ridgeway Emmons, deceased, filed a petition for the sale of certain real estate for the payment of claims allowed against said estate. The petition was granted, and Henry B. Lippincott appealed to the circuit court. There was judgment affirming the order of the probate court, and contestant brings error. Reversed, and petition dismissed.

An administrator de bonis non of the estate of B. Ridgeway Emmons was appointed, upon whose petition, showing debts unpaid, an order was granted by the probate court of Lapeer county for the sale of certain real estate to pay such debts. Upon the appeal of Lippincott, the matter was heard at the circuit by the judge sitting without a jury. The amended findings of fact and conclusions of law state the case:

## "FINDINGS OF FACT.

"1. That B. Ridgeway Emmons died July 19, 1893.

"2. That there was an administration of his estate. Administration of his estate was first committed to Rebecca Emmons, his widow, who was appointed administratrix September 7, 1893.

"3. She filed an inventory of the said estate October 5, 1893, and it included lands now sought to be sold by the administratrix de bonis non. It also included other lands.

"4. License to sell the real estate of the deceased was granted July 2, 1894.

"5. The sale under said license took place prior to August 27, 1894, and all lands were sold, except the parcel sought to be sold in the present proceedings.

"6. The sale of the real estate was confirmed by the probate court August 27, 1894.

"7. Proceedings were taken to fix and determine the S. W. ¼ of the S. W. ¼ of section 7 of Almont, Lapeer county, to be a homestead, and the probate court of Lapeer county set off such land to the widow as a homestead July 2, 1894.

"8. Appraisers were appointed by said court to appraise the 'homestead,' and they reported its value to the probate court at $1,500. This report was prior to July 2, 1894, and was confirmed by the probate court November 30, 1894.

"9. No commissioners on claims were appointed, but claims were heard by the judge of probate. On March 7, 1894, the probate judge allowed claims to the amount of $2,508.04. On April 4, 1894, he allowed claims to the amount of $205.53, and on May 14, 1894, he allowed claims to the amount of $19.64. The total amount of claims allowed by the probate court against the estate was $2,734.16. The hearing of claims was closed May 14, 1894. Twenty per cent. of said claims were paid by the administratrix. Eighty per cent. remain now unpaid.

"10. Rebecca Emmons, administratrix, filed her final account, which was allowed, February 25, 1895. The order allowing said account is as follows:·

"'STATE OF MICHIGAN, } ss. :
County of Lapeer. }

"' Probate Court for said County.

"'At a session of probate court for the county of Lapeer, holden at probate court in the city of Lapeer, on the 25th day of February, 1895.

"'Present.—Edgar S. Hough, Judge of Probate.

"'In the Matter of the Estate of B. Ridgeway Emmons, Deceased and Incompetent.

"'Rebecca Emmons, administratrix of said estate, having on the 30th day of November, A. D. 1894, filed in the court petition for final settlement as such administratrix, and this court having appointed the 2d day of January, 1895, for hearing said petition.

"'And it satisfactorily appearing by due proof on file that due notice of the hearing of said account has been given to all persons interested, as directed by the court, and the hearing on said account having been continued from time to time.

"'Now comes into court said administratrix, and, after a full examination and hearing on said account.

"'It is ordered and decreed by the court that upon said administratrix filing receipts from the several claimants for 20 per cent. of their several claims, as allowed by probate court, said residue of said estate, as specified in said account, shall be turned over to said Rebecca Emmons as widow of said deceased.

"'And it is ordered and decreed that said administratrix do pay all the claims as allowed by probate court at 20 per cent. of said claims as so allowed within one year from this 25th day of February, 1895, and upon the payment of said

20 per cent., as above stated, the said Rebecca Emmons, as such administratrix, shall be discharged and said estate closed.    The above-mentioned 20 per cent. being the dividend due the several creditors of said estate, as determined by this court after a full hearing and examination of said account.'

"11. On October 7, 1896, the probate court entered an order discharging the administratrix and closing the estate. The order in full is as follows:

" 'STATE OF MICHIGAN, ⎫ ss.: ·
     County of Lapeer.       ⎭

" " 'Probate Court for said County.

" " 'By Edgar S. Hough, Judge of Probate.

" " 'In the Matter of the Estate of B. Ridgeway Emmons, Deceased.

" " 'Whereas, it appears by the records and proceedings of said court, you, the said Rebecca Emmons, have in all things faithfully and justly performed and discharged all and singular the duties and obligations, which by law and the orders of said court were required of and enjoined upon you as such administratrix, and that you have duly and fully accounted for and administered all of said estate which has come into your possession in pursuance of law.

" " 'Therefore, in consideration of the premises, you, the said Rebecca Emmons, administratrix aforesaid, are hereby discharged, exonerated, and acquitted from any and all liabilities and troubles concerning your administration of said estate, and your doings and proceedings are forever quieted, your administration bond canceled, and your letters of administration heretofore granted arc hereby revoked and annulled.

" " 'In witness whereof, I have hereunto set my hand and affixed the seal of said court at the probate office, in the city of Lapeer, this 7th day of October, A. D. 1896.'

"12. There was no appeal from the order of the probate court allowing the final account of said administratrix or any proceedings to set aside said order, nor was there any appeal taken from the order of the court of date of October 7, 1896, discharging the administratrix and closing the estate, nor were any proceedings taken to set aside said order.

"13. Rebecca Emmons, widow of the deceased, remarried January 9, 1896, to Henry B. Lippincott, the appellant in the present proceedings.

"14. There was no concealment of the remarriage of the widow to Henry B. Lippincott, and the parties lived together as husband and wife upon the land sought to be sold continuously from January 9, 1896, to the death of Rebecca Lippincott, October 29, 1903.

"15. The marriage of Rebecca Emmons to Henry B. Lippincott and their living together as husband and wife was known to some, probably to all, of the creditors whose claims had been allowed by the probate court.

"16. The probate court of Lapeer county entered an order limiting the time for the settlement of the estate on September 7, 1893, and the limit of the order was one year. No order extending the time for a settlement of the estate was ever entered.

"17. That B. Ridgeway Emmons died intestate and without issue him surviving, and thereafter his widow became entitled to the interest in said lands as provided in 3 Comp. Laws, § 9064, subd. 2. That, at the death of B. Ridgeway Emmons, the brothers and sisters, or their representatives, heirs at law, entitled to inherit the other one-half interest of said lands, were: Jesse Emmons, brother deceased; Sophia Lippincott, sister; Caroline Gaskill, sister; Sarah Keene, sister; William Emmons, brother; Bulah Todd, sister; Elizabeth Rockhill, sister; Mary Van Horn. The appellant, Henry Lippincott, represented the interest as assign of Jesse Emmons and Sophia Lippincott, as well as the interest of Rebecca Emmons Lippincott, and that he represented a five-eighths interest in said lands.

"18. December 6, 1903, a petition was filed for the appointment of an administrator de bonis non of the estate. On January 4, 1904, the administrator de bonis non was appointed and the same day filed a petition for license to sell the lands in question. License to sell was afterwards granted and an appeal therefrom taken to the circuit court for Lapeer county.

"19. The order allowing claims on file shows the claims to firms in the firm name of such firms and the amounts allowed them are as follows:

| | |
|---|---|
| Lamb & Folsom | $128 58 |
| J. W. Cole & Sons | 9 00 |
| D. & A. Cockrane | 57 01 |
| J. C. Lamb & Co. | 21 65 |
| F. A. Burnett & Co. | 3 70 |
| Heenan & Hibler | 49 30 |

"20. That in the administrator's final account no mention was made of the homestead, the S. W. ¼ of the S. W. ¼ of section .7, town 6 N., of range 12 E., but the final account did contain the following:

"'Your petitioner further represents that no allowance was made for her support and maintenance during the settlement of said estate, nor has any portion of the personal property of said estate been set aside to her as his widow.

"'Your petitioner further represents that there remains in her possession the following personal property belonging to said estate, viz.: 19 pigs, 4 cows, 3 sows, 2 horses, one mower, one pair sleighs, one harrow, one set of harness, one hay rack, one pair of trucks, one buggy, one cultivator, one plow, one binder, flock of chickens, one colt, about three tons of hay, about 150 bushels of oats, about 75 bushels of corn, about 150 bushels of wheat, and some household furniture; that the value of said property would not exceed $300.00, and your petitioner prays that an order may be made setting off to her and for her own the personal property above described.'

"The footing of receipts and disbursements shown by this account are:

Receipts, including land sold, $456, under license_$6,118 86
Disbursements allowed _____,_____ 9,258 64

Excess of disbursements by administratrix over
    receipts _____$3,139 78

"Excess of disbursements over receipts, including appraised value of homestead and not including 20 per cent. to be paid, $1,639.78, but the amount of the disbursements allowed, to wit: $9,258.64, include the following items for incidental expenses of the guardian and for her compensation.

April 21, 1891, incidentals_____ $250 00
April 21, 1891, guardian's services_____ 200 00
May 20, 1892, 1 year's services and incidentals_____ 400 00
May 17, 1893, 1 year's services_____ 250 00
May 5, 1894, 1 year's services_____ 150 00

                                                  $1,250 00

"21. Henry Lippincott is not a purchaser in good faith for a valuable consideration. He had knowledge of the condition of the estate of B. Ridgeway Emmons and knew

that the creditors had been paid but 20 per cent. of their claims, and he claims to have paid only $1 for the deed from Rebecca Emmons to himself.

"22. On January 9, 1896, at the time Henry Lippincott and Rebecca Emmons were married, they were both old people. Henry Lippincott had no home or property and Rebecca Emmons had no other home on the property in question and had no property except such as she was entitled to as a widow of B. Ridgeway Emmons.

"23. Henry Lippincott and his wife, Rebecca Emmons Lippincott, occupied said premises as their home from time of their marriage until the death of Rebecca Emmons Lippincott.

"24. B. Ridgeway Emmons at his death, July 19, 1893, was seised in fee of the following lands situate in Lapeer county, Mich., to wit: E. ½ of S. W. ¼, S. ½ of W. ½ of N. W. ¼, all in Sec. 7, T. 6 N., R. 12 E., 178 acres, and no steps were ever taken by the widow to have her dower in said lands admeasured and she never released her dower right in his said lands, except to the E. ½ of S. W. ¼, Sec. 7, T. 6 N., R. 12 E.

"25. Prior to his death Emmons, his wife not joining, had mortgaged the W. ½ of the S. W. ¼ and the S. ¼ of W. ½ of N. W. ¼, Sec. 7, T. 6 N., R. 12 E. Subsequent to the sale of the lands under the license of the probate court in 1894, made subject to dower and said mortgage amounting to $1,600, Rebecca Emmons became purchaser of the same, and paid, satisfied, and discharged the mortgage lien on said lands.

"26. Under the license from the probate court the administratrix sold the N. W. ¼ of S. W. ¼ of Sec. 7, T. 6 N., R. 12 E. and S. ¼ of W. ½ of N. W. ¼, Sec. 7, T. 6 N., R. 12 E., to Marvil I. Brabb for $25, subject to the mortgage at that date amounting to $1,600 and dower; and sold under said license the E. ½ of S. W. ¼, Sec. 7, T. 6 N., R. 12 E., to Charlotte I. Lathrop for $431, in the deed of which Rebecca Emmons joined to release her dower.

"27. The estate of B. Ridgeway Emmons was appraised in the sum of $7,146.30, of which $5,830 was realty and $1,316.30 personalty.

"28. Rebecca Emmons, as administratrix, never received her statutory fees for her per diem, and percentage for administering said estate, and no compensation was ever allowed her as a credit.

"29. No statutory allowance was made for widow except the property mentioned in the order allowing her account amounting to less than $300 turned over to her.

"30. At the allowance of final account there were no assets of the estate, except the homestead and the personal property reported as on hand and turned over to the widow, with which to pay the claims allowed or any dividends thereon.

## "Findings of Law.

"1. That the orders of the probate court entered February 23, 1895, and October 7, 1896, allowing the administratrix final account and closing the estate, are not a bar to the subsequent proceedings now sought.

"2. That a sale in this case is not barred because asked more than four and one-half years after the original appointment of an administrator.

"3. That the several notes and accounts allowed as valid claims by the judge of probate court, prior to May 15, 1894, became a lien upon the estate, and as such are not outlawed.

"4. That a sale ought not to be barred by the mere lapse of time since the remarriage of the widow January 9, 1896. That a satisfactory excuse for the delay exists, and that appellant is estopped from objecting that the creditors allowed his wife to retain possession of all the land in question. There were, however, no special circumstances to cause the delay. The delay was mere leniency on the part of the creditors.

"5. That the order of the probate judge licensing a sale should be affirmed."

Counsel for appellant presents and argues propositions stated by him in the following form:

"(a) Whether a homestead set off as such during administration, but which ceases to be a homestead by remarriage, nine months prior to the close of such administration, can again be subjected to the lien of creditors who have failed to appeal from the orders closing the estate where no action has been taken for over seven years after the order closing the estate is entered.

"(b) Whether the orders closing the estate are not res judicata as to the status of the property in administration, and estop both creditors and the court and take from each the power to again seek administration over property once in such administration.

"(c) Whether the orders allowing the account, assigning the residue, and closing the estate do not pass to the heirs at law all of the estate in such administration free from the equitable lien of creditors.

"(d) Whether creditors suffering all rights of action against the administratrix to become barred have not ceased to be creditors, and for that reason lost all liens against property in the first administration.

"(e) Whether appellant, who took as purchaser from Rebecca Emmons Lippincott seven years after the order closing the estate was entered, is not entitled by reason of such lapse of time to claim that the records and files of the probate court and orders closing the estate are res judicata as to all property in administration and render him a bona fide purchaser as against the creditors of the estate.

"(f) Whether Rebecca Emmons, who is found to have paid $3,139.78 more than she received and who was required by the court to pay the creditors' claims at 20 per cent. in addition as a condition of discharge, with no assets of the estate in her hands with which to pay the 20 per cent., and who received no compensation or statutory allowances other than is mentioned in the account and order allowing the account, is not equitably entitled to stand as against creditors as a purchaser for full value at least of such interest as would pass to her as widow under 3 Comp. Laws, § 9064, subd. 2.

"(g) Whether there is any statute which authorizes a homestead to be sold after the probate court has allowed a final account, decreed distribution of assets, discharged the administratrix, exonerated the bond, and formally closed the estate.

"(h) Whether $4\frac{1}{2}$ years from the granting of administration or $4\frac{1}{2}$ years from the closing of administration is a limitation, and, if so, if there is any law authorizing land once in administration thereafter to be sold for the payment of debts of the deceased after such lapse of $4\frac{1}{2}$ years, where the estate has been regularly and formally closed."

It is contended by counsel for appellee that but two propositions were involved, which are: (a) Whether creditors were guilty of such laches, under all the circumstances, as to prevent their having the land sold to pay their claims; and (b) whether appellant is in a position to avail himself of the defense of laches.

*Dwight N. Lowell* (*Byron R. Erskine*, of counsel), for appellant.

*Geer, Williams & Halpin* and *Elmer Shumar*, for appellee.

OSTRANDER, J. (*after stating the facts*). While lands of an intestate deceased person descend *subject to his debts* (3 Comp. Laws, § 9064), an interest or estate may exist in such lands or in a part of them superior immediately to the rights of creditors. The Constitution provides:

" If the owner of a homestead die, leaving a widow, but no children, the same shall be exempt, and the rents and profits thereof shall accrue to her benefit during the time of her widowhood, unless she be the owner of a homestead in her own right." Article 16, § 4.

This court has held that this homestead right attaches whether the estate be solvent or insolvent. *Koster* v. *Gellen*, 124 Mich. 149; *Eagle* v. *Smylie*, 126 Mich. 612. It was strongly intimated that a sale of the homestead property, to pay debts, ought not to be made during the continuance of the homestead interest. *Showers* v. *Robinson*, 43 Mich. 502; *Zoellner* v. *Zoellner*, 53 Mich. 620. See *Louden* v. *Martindale*, 109 Mich. 235. Remarriage of the widow, there being no children, terminates the homestead right, though her dower right is not thereby affected. *Dei* v. *Habel*, 41 Mich. 88.

All statutes relating to the settlement of estates of decedents must be construed together; and, so far as is possible, harmonized. Where limitations of time are imposed, they must yield to the consideration that they cannot be held to apply if their application would defeat the general purpose of devoting the estate to the payment of debts. The legislature has recognized that the limits it has set generally to the time within which estates must be closed may not always be observed. Rather, it has made an express exception in 3 Comp. Laws, § 9137, in providing:

" If the appraised value of the homestead, as fixed by the probate court in the manner provided in section one of this act, shall not exceed fifteen hundred dollars, no further action shall be taken or had in the matter until such homestead shall cease to be exempt from the payment of the debts of the deceased."

Manifestly the time when a homestead in lands of a decedent will cease to be exempt from the payment of debts is uncertain, and it may be so exempt for a period greater than the longest time fixed otherwise for the settlement and closing of estates. See *Kraft* v. *Kraft*, 102 Mich. 439, 441. The facts found show the separating of the homestead property, of the value of not more than $1,500, from the other property of the estate, the insolvency of the estate, and the disposition of the remainder of the estate. They show that the homestead property became available to pay debts, if at all, on January 9, 1896, upon the remarriage of the widow. More than seven years elapsed before the petition for appointment of an administrator de bonis non was filed.

It is contended by counsel for appellant that the statute (3 Comp. Laws, §§ 9134-9137) " in no manner changes or affects the homestead when only of the value of $1,500, and does not in direct terms authorize a sale, except when exceeding that value," and that " there is no provision of law which authorizes a sale except during the administration, and no provision for pursuing it after administration is closed.

If the import of this argument is understood, it is that such a homestead—one in value no more than $1,500—cannot be sold at all, if the statute is followed, unless it falls into the estate before the time otherwise limited by statute for closing the estate, or before the time when the estate is, otherwise, actually closed. Such a holding would do violence to settled rules of construction. There may be difficulties in fact, but there is no legal difficulty in saving both the constitutional homestead for those entitled to it, and, ultimately, the value of the fee for cred-

itors of the decedent. The statute referred to, enacted in
1887, may be presumed to have been suggested by de-
cisions of this court, and to have been intended to set at
rest the questions discussed in *Showers* v. *Robinson,*
supra, and in other of the cases cited.

We are not required to indicate rules of proper procedure
in such cases. In the case before us procedure has been
adopted, the effect of which is questioned. It is neces-
sary to consider whether, for any of the reasons assigned,
the administrator de bonis non is to be held precluded
from subjecting the particular homestead to the payment
of debts.

The objections made are founded upon (1) the effect of
the proceedings to close the estate, and (2) upon the lapse
of time. They will be considered together. It is not en-
tirely clear, upon this record, what effect the order of Feb-
ruary, 1895, was intended to have. Before his death the
estate of Mr. Emmons had been in charge of his wife as
guardian, and the probate court considered and attempted
to settle, in one proceeding, the accounts of Mrs. Emmons
as guardian and as administrator. It is found that, when
the final account was allowed, there were no assets except
the homestead and the personal property reported to be on
hand, and which was, upon conditions named, turned over
to the widow. Yet it was, for some reason, perhaps a
reckoning of the then present value of the homestead, re-
quired that she pay to creditors, whose claims had been
allowed, 20 per cent. of their several claims. The statute
(3 Comp. Laws, § 9403) provides for the payment of a divi-
dend when there shall not be assets sufficient to pay all of the
debts of a class. Claims had been allowed to the amount of
$2,734.16. The value of the estate, realized, was $6,118.86.
Disbursements were allowed to the amount of $9,258.64.
Including the appraised value of the homestead, the ex-
cess of disbursements, exclusive of the 20 per cent. of
claims ordered paid, was $1,639.78. Of this sum $1,250
was allowed as guardian's compensation, so that the ex-
cess of actual disbursements over total appraised and re-

covered values was $389.78.    Add to this 20 per cent. of claims paid, $546.83, and it appears that Mrs. Emmons disbursed $936.61 over and above the value of the whole estate which decedent left.    She was allowed no compensation as administratrix, had no allowances as widow, excepting the personal property described in her final account. Her dower interest was never admeasured.    She had herself an allowed demand against the estate for $605.    There is, therefore, ground for saying that the orders of February, 1895, and October, 1896, were intended as disposing finally of the rights of creditors in and to the estate upon a basis considered to be equitable.    That such was the intention may be further inferred from the following facts:    No appeals were taken.    When the final order was entered, the homestead interest had for several months been terminated. The widow continued to occupy the homestead with appellant, her husband, until her death, October 29, 1903. Either by will or by deed she conveyed her interest in the land to appellant.    Two of the heirs at law of B. Ridgeway Emmons have transferred their interests to appellant, and last, but not least, a fact not found nor requested to be found by the court, but which is shown by the undisputed testimony, none of the creditors who presented claims were concerned in the appointment of the present administrator.    The statement in the findings of law:

"That a satisfactory excuse for the delay exists and that appellant is estopped from objecting that the creditors allowed his wife to retain possession of all the land in question.    There were, however, no special circumstances to cause the delay.    The delay was mere leniency on the part of creditors"—is supposed to be based in part upon the asserted duty of the administratrix to herself devote the homestead property to the payment of the debts. This finding emphasizes the fact that the asserted neglect of duty and the real rights of creditors have been all of the time known to the creditors.    The discharge of the administratrix was evidence to them that further action on her part was not to be expected.

It is argued for appellee that the question whether this estate should be opened has been passed, that it is open and in the hands of an administrator, and that the specific property not having been, in fact, heretofore devoted to the payment of debts, and it appearing that debts remain unpaid, the question of selling, unaffected by the former orders, is the only question here. The petition upon which the administrator de bonis non was appointed is not before us. It cannot, however, be held that the order opening the estate and appointing a representative is conclusive of the rights of owners of property which at some time was part of the estate. The fee of the particular property descended—one-half to the wife, one-half to the other heirs. It was subject to be set apart as a homestead for the widow, and also to be sold for the benefit of creditors. The homestead right was interposed, and it ceased before the estate was settled and closed, of which facts all those interested had knowledge. If the orders which were entered, the estate being insolvent and the orders, in terms, closing it, were not conclusive upon the matter here presented after the time for appeal had expired, a point upon which no opinion is expressed, it is still true that a time must come in such cases as this when the heirs and the public may safely deal with the property. What is a reasonable period for action is, in this case, a question to be answered by the court. It is answered by saying that the unexcused delay for more than six years must be held to have determined the rights of the creditors to enforce their claims.

It should be certified to the probate court that the order appealed from should be set aside, and the petition for the sale of the homestead property dismissed. Appellant will recover costs of all courts.

McAlvay, Grant, Blair, and Montgomery, JJ., concurred.