*In re* THAYER'S ESTATE.

NATIONAL SURETY CO. *v.* THAYER'S ESTATE.

1. EXECUTORS AND ADMINISTRATORS—PROBATE PROCEEDINGS STATUTORY.

Probate proceedings are purely statutory.

2. SAME—KEEPING OPEN ESTATE—DISCRETION OF COURT—JURISDICTION.

If any application, notice, or knowledge of an exceptional claim comes to the probate court it has a limited discretion to longer keep the estate open to entertain the same, but it is the policy of the law that the assets of the estates of deceased persons shall be assembled, debts ascertained and paid, the residue distributed to beneficiaries and the estate closed with all convenient dispatch, and when the estate is finally closed, the jurisdiction of the court in that case ends.

3. SAME—SUPPLEMENTAL PROCEEDINGS—PURPOSE.

The statutory provisions made for supplemental proceedings *de bonis non*, where concealed or previously undiscovered assets of the estate become known, do not contemplate further proof of claims, but are only for distribution of such assets to those entitled to them at the time the estate was closed.

4. SAME—CONTINGENT CLAIM AGAINST CLOSED ESTATE—NO AUTHORITY TO REOPEN—STATUTES.

Where an estate had been finally closed and the executor discharged, the court had no authority, under 3 Comp. Laws 1915, § 13901, to reopen the estate and entertain a contingent claim against it by a surety company by reason of its liability upon a bond in which deceased was principal, and upon which a right of action had accrued.

Error to Kent; Brown (William B.), J. Submitted April 8, 1920. (Docket No. 27.) Decided June 7, 1920.

Petition by the National Surety Company to re-open the estate of George W. Thayer, deceased, for the purpose of filing a claim. The petition was denied in the probate court, and plaintiff appealed to the circuit court. Judgment for plaintiff. Defendant Michigan Trust Company, trustee, brings error. Reversed, and petition dismissed without prejudice.

*John E. More,* for appellant.

*Colin P. Campbell,* for appellee.

STEERE, J. George W. Thayer, to whose estate this litigation relates, died testate in the city of Grand Rapids, Michigan, on September 21, 1916. The amount of his estate is not disclosed nor what his will provided, beyond the fact that he left a "residue" of his estate to the Michigan Trust Company of that city to be held by it as trustee for two beneficiaries named George W. Thayer, Jr., and Cassius Thayer, nominating said trust company as executor of his will. On October 3, 1916, said will was duly probated and allowed in the probate court of Kent county and said trust company was appointed executor, but what steps were taken by the executor in administering the estate is largely left to inference. It does, however, appear that on May 4, 1917, the Michigan Trust Company, as executor, turned over to itself as trustee for George W. Thayer and Cassius Thayer the residue of said estate, amounting to upwards of $75,000, which it yet holds as trustee; that on May 22, 1917, it was discharged as executor of said will and administration of the estate was closed by order of the probate court.

In the course of these proceedings the Michigan Trust Company took possession of certain securities concededly held by decedent as a trustee which, so far as this record discloses, it yet retains and on May 23, 1919, a petition was filed in the probate court of Kent

county by the National Surety Company of New York, asking that said estate be reopened and that it be allowed to file its claim against the estate of deceased upon the facts stated in its petition relating to Thayer's trusteeship, and funds held by him as trustee at the time of his death, with the concluding prayer:

"that said claim may be adjudicated and allowed to your petitioner, and that your petitioner may have such other and further relief in the premises as in equity and good conscience it may be found entitled to and as to the court may seem meet."

The National Surety Company's claim is alleged to have been contingent until after probation of the Thayer Estate in Kent county had been closed, and is for an amount said trust company avers itself liable to pay on a certain bond in which it became surety for said George W. Thayer in 1899, at which time he was appointed by the surrogate court of Onondaga county, New York, trustee of the estate of one Dioclesian Alvord, deceased, then pending in said court, and required to give a bond for faithful performance of his trust.

A hearing was held before the probate court upon such application for leave to file the New York claim, and the same was denied because the statutory limit of time in which such belated application could be granted had expired, leaving the court without jurisdiction to entertain the same. Petitioner thereupon appealed from said denial to the circuit court of Kent county where trial was had before the court without a jury. Findings of fact and conclusions of law thereon were requested and filed. The decision of the probate court was reversed, with judgment entered determining that the estate should be reopened and said claim passed upon by the probate court to which the case was remanded for further proceedings. The proceeding was then removed to this court for review on

writ of error by counsel appearing for the Thayer estate.

The somewhat historical and smoothly explanatory narrative in appellant's statement of facts relating to the estate of Dioclesian Alvord, deceased (said but not shown by the record to have died before May 11, 1868), is said by appellee's counsel to be based more largely on "fancy and imagination" than facts disclosed by the record. Counsel do not on either side favor the court by any reference to pages or portions of the record in support of the facts they claim, but a study of the record forces the conviction that frequent portions of the story told in appellant's statement of facts while not improbable nor vitally material, as we think, must have been obtained from sources *dehors* the record.

From the court's finding of facts and documentary evidence in the record, it can, however, be authoritatively but somewhat disjunctively stated that Dioclesian Alvord died some time before 1899 leaving an estate and a will providing for a trusteeship which was admitted to probate by the surrogate court of Onondaga county, New York; that on June 26, 1899, said surrogate court appointed George W. Thayer, now deceased, trustee of said estate, requiring him to give a bond in the sum of $10,000 for the faithful performance of said trust, which he did, securing said National Surety Company of that State as his surety on said bond. In connection therewith and as part consideration therefor he signed and acknowledged an agreement that he would—

"pay over, reimburse and make good to the company, its successors and assigns, all sums and amounts of money which the company or its representatives shall pay or cause to be paid or become liable to pay, under its obligation upon said instrument, or as charges and expenses of whatsoever kind or nature, including counsel and attorney's fees, by reason of the execu-

tion thereof, * * * to the company as soon as it shall have become liable therefor, whether it shall have paid out said sum or any part thereof or not."

There then came into the hands of said George W. Thayer as trustee three parcels of real estate located in Onondaga county, New York, which he subsequently sold receiving therefor $19,000 which he invested in interest-bearing bonds, and during his lifetime paid the interest received thereon to Elizabeth K. Sherwood, the beneficiary of said trust (said but not shown by the record to have been a daughter of Dioclesian Alvord, deceased), who died June 13, 1916. Amongst those securities were $4,000 worth, par value, of Montezuma county, Colorado, bonds which defaulted in payment of interest January, 1914, and have yielded no income since.

The Michigan Trust Company is not shown to have taken any steps with reference to Thayer's trusteeship of the Alvord estate or the trust securities belonging thereto which it took possession of and yet holds, so far as this record shows, until after the Thayer estate was closed and the executor discharged, when, on July 17, 1917, said Michigan Trust Company in behalf of the estate of George W. Thayer, deceased, filed its petition and claimed final account in the surrogate court of Onondaga county, New York, praying for a determination in relation thereto, and allowance of said account with instructions as to the disposition of trust funds of the Alvord estate so held by it. An answer to such petition was filed in the surrogate court by one Robert H. Sherwood, stating he was sole heir of Elizabeth K. Sherwood, deceased, and by the terms of the will of Dioclesian Alvord entitled at her death to the funds so held in trust by George W. Thayer at the time of his death. Thereafter, on September 12, 1918, a decree was made and entered by the surrogate court of Onondaga county

which, amongst other things, decreed and directed that the Michigan Trust Company pay over the sum of $19,200 to Robert H. Sherwood, the then beneficiary entitled to said trust fund received by it from the estate of George W. Thayer, deceased. The Michigan Trust Company has not appealed from said decree nor complied with its requirements and, as stated by the trial court, "does not propose to." The National Surety Company also stated in the petition it filed with the probate court of Kent county, on May 23, 1919, that it had no notice or knowledge of such proceedings or of the decree by the surrogate court until it received a copy of such decree in September, 1918; that said Robert H. Sherwood refuses to accept said securities from the Michigan Trust Company, demanding "cash be paid him instead," and that he is "proceeding against your petitioner in the State of New York to enforce its liability upon said bond under said decree and your petitioner will be to additional expense and cost in the premises, all of which the estate of George W. Thayer should pay."

If the printed record in this case is reliable, the petition of the National Surety Company was signed by R. C. Carson, its vice president, and sworn to by him before a notary public of New York on May 19, 1918, a year before it was filed in the probate court of Kent county. But passing that by as a possible clerical error, it is undisputed that the petition in question was filed in the probate court of Kent county more than two years after the estate of George W. Thayer was closed and his executor discharged.

Appellee's counsel concedes that under the situation presented here its petition can only be entertained by the probate court, if at all, under authority of that portion of our statutes relative to probate proceedings covered by the sub-heading "Contingent Claims," being compiler's section 13897 *et seq.*, chapter 56 of the

Compiled Laws of 1915, entitled "Payment of Debts of Deceased Persons—Limitation of Time for Payment of Debts," and states that the section relied upon is section 19 of the chapter (3 Comp. Laws 1915, § 13901) which is as follows:

"If the claim of any person shall accrue or become absolute, at any time after the time limited for creditors to present their claims, the person having such claim may present it to the probate court, and prove the same at any time within one year after it shall accrue or become absolute, and if established in the manner provided in this chapter, the executor or administrator shall be allowed to pay it, if he shall have sufficient assets for that purpose, and shall be required to pay such part as he shall have assets to pay." * * *

For the defense it is contended that the plaintiff's claim was not presented within one year after it had accrued or become absolute, and that, taking together the various provisions of the statute on probation of claims against estates of deceased persons, it is manifest that the sections relating to "contingent claims" apply only to unclosed cases, or estates, yet pending in the probate court.

Both parties apparently recognize that the section in question is to be read and construed in the light of other provisions of the law relative to probating claims. Two chapters of the probate law deal with the subject of presenting and proving claims against estates. Chapter 55, 3 Comp. Laws 1915 (commencing on page 4856), entitled "Of Commissioners on Claims," consisting of 19 sections, provides for their appointment after letters of administration have been granted, the proceedings before them, their powers and duties, and those of the court in that connection, including time allowed to present claims, extension of such time and revival of the commission by the court

while the estate is yet pending, etc.   Sections 7 and
14 of that chapter provide:

"(13870) SEC. 7. On the application of a creditor
who has failed to present his claim, if made at any
time before the estate is closed, the judge of probate
may revive the commission and allow further time
not exceeding one month, for such creditor to present
his claim to the commissioners.   When such claim
shall have been presented to the commissioners, they
shall personally notify the executor or administrator."
*   *   *

"(13877) SEC. 14. Every person having a claim
against a deceased person, proper to be allowed by
the commissioners, who shall not, after the publica-
tion of notice as required in the second section of
this chapter, exhibit his claim to the commissioners
within the time limited by the court for that purpose,
shall be forever barred from recovering such demand,
or from setting off the same in any action whatever."

Chapter 56, entitled as before quoted and consisting
of 30 sections, continues the subject of debts of de-
ceased persons and upon "contingent claims," section
15 of said chapter, the first under that heading, au-
thorizes any person who is liable as security for the
deceased or has any other claim against his estate
which cannot be proven as a debt against his estate
before the commissioners, or allowed by them, to pro-
tect the same by proving it properly before the com-
missioners, who are to embody it in their report, or
before the court itself, after which the administrator
may with consent of the claimant and permission or
direction of the court settle or adjust certain kinds
of such claims and pay them, as other proved debts
of the estate.   Section 16 provides that if the court
is satisfied from the report of the commissioners, or
proof exhibited, it may order the executor or admin-
istrator to retain sufficient of the estate to pay such
contingent claim when it becomes absolute or, if the
estate be insolvent, sufficient to pay the same per-
centage as to other creditors.   Section 17 provides for

proving a contingent claim which has become absolute, if presented to the executor, administrator or court at any time within two years from the time limited for other creditors to present their claims, on making proper proof of the same as in other cases. Section 18 provides for payment of such contingent claim when allowed if the estate retained by the executor or administrator be sufficient for the purpose, and section 19, upon which plaintiff relies, provides for proof and payment by the "executor or administrator" as before quoted.

Each of these sections relating to contingent claims, including section 19 and also others which follow, name *executors* and *administrators* upon whom duties are imposed, thus apparently contemplating unclosed estates yet pending in the probate court with such officers representing them. If section 19 was intended to apply after the estate is closed and presumably fully administered, its assets distributed and the administrator or executor finally discharged, leaving no assets or legal representative of such estate in the probate court, the incongruous recognition by direct reference to such discharged officers as though yet functioning and ready to perform their official duties under the direction and orders of the probate court which had discharged them is difficult to harmonize with such intent.

Those various provisions relative to proving claims against estates of deceased persons in probate court are of old enactment. In *Showers* v. *Robinson*, 43 Mich. 502, it was said of their limitation by Justice COOLEY, apparently as of general application: "All claims against the estate are barred which are not presented and proved before the administrator is discharged"; citing *Brown* v. *Forsche*, 43 Mich. 492, where the statute relative to probation of estates is discussed at some length.

In *Seilnacht* v. *Wayne Probate Judge*, 201 Mich. 536, the court said in discussing a kindred limitation in the probate law:

"By its terms creditors are preserved the right to present their claims 'at any time before the estate is closed.' When the estate is once closed that right is at an end. The proceedings are purely statutory. Before the estate is closed the right given by this statute is an absolute right, does not depend upon the discretion of the probate judge, and the commission on claims may be revived *ex parte* and without notice (citing cases). But by the terms of the statute when the estate is closed the right is at an end and the claims of creditors are barred (citing cases). There is no provision in the statute which revives this right, once barred by the statute, upon the discovery of additional assets for administration and the appointment of an administrator *de bonis non*. * * * Title to property administered in probate courts should be stable. The statute has wisely provided ample time for the presentation of claims against estates and has also wisely provided a time at which they shall be barred."

Probate proceedings are purely statutory. Under them ample time and opportunity with published notice is given all creditors of a deceased to present, prove, or exhibit to protect their rights, any and all claims they may have, and when contingent yet further time. If any application, notice or knowledge of an exceptional claim comes to the probate court it has a limited discretion to longer keep the estate open to entertain the same. But it is the policy of the law in this State and elsewhere that the assets of the estate of deceased persons shall be assembled, debts ascertained and paid, the residue distributed to beneficiaries and the estate closed with all convenient dispatch. If such course is pursued regularly and fairly in strict compliance with statutory requirements until the purposes of probation are fully accomplished in

everything connected with the estate known to the court and the estate is finally closed, it is a well recognized general rule that the jurisdiction of the court in that case ends. The statutory provisions made for supplemental proceedings *de bonis non,* where concealed or previously undiscovered assets of the estate become known do not, as said in the *Seilnacht Case,* contemplate further proof of claims, but are only for distribution of such assets to those entitled to them at the time the estate was closed.

In *Mutual Life Ins. Co.* v. *Hill's Estate,* 108 Mich. 126, the section relied on here was involved and is there quoted. Of it this court then said:

"The plain purpose of this statute was to give creditors a year after their claims accrued or became absolute within which to present them against the estate. The time for such a claim to accrue or to become absolute does not depend upon the rendition of a judgment against the principal. When a right of action accrued upon the bond, the right to present and prove the claim against the estate arose. Suit could have been brought upon this claim against the principal and surviving surety at any time before it was barred by the statute of limitations; but the above statute limits the right to present such claim against the estate of a deceased to a year from the time when suit might be brought against the surety if living."

So far as can be gathered from the record in the instant case, when the beneficiary for life, Elizabeth K. Sherwood, died on June 30, 1916, a right of action accrued upon the trustee's bond to Robert H. Sherwood, the beneficiary then entitled to the trust fund, against George W. Thayer and the National Surety Company. Such liability of principal and surety in case the principal failed in the voluntary performance of his trust existed from that time. After Thayer's death the liability of his estate and his surety yet continued although diminishing probability of faithful and prompt accounting by or for the estate

of the deceased trustee may have made the bonds-
man's liability to respond more acute. A judgment
against the principal was not a prerequisite. So far
as shown the National Surety Company has not yet
been compelled to respond, or pay anything to the
beneficiary by reason of its suretyship. In that aspect
of the case the claim appears yet contingent.

It is strenuously urged for plaintiff that as its only
recourse is to file this claim against the Thayer estate
in the probate court, the construction contended for
by defendant would be grossly inequitable, as it "would
enable the Thayer estate to profit to the extent of at
least $10,000 to our disadvantage and to the disad-
vantage of the beneficiary of the trust."

Why this trust was seemingly ignored in the pro-
bate proceedings, if known to the executor or court
before the estate was closed, this record which leaves
many things to surmise furnishes no explanation; but
it does appear that this contention involves a trustee-
ship and trust funds, matters peculiarly and generally
within equity jurisdiction, that the Michigan Trust
Company, presumably a responsible financial concern,
took control of those trust funds or the securities in
which they were invested along with a residue of the
estate, then knowing or subsequently learning their
character, and so far as appears the identity of the
trust fund has not been obscured by blending it with
the assets of the trustee. A glance at the law of trusts
suggests a possibility that the disaster prophesied is
not inevitable.

The judgment of the circuit court is reversed with-
out a new trial, and also without prejudice to any
other or different proceedings plaintiff may see fit to
institute in reference to said trust fund.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK,
BIRD, and SHARPE, JJ., concurred.